INTER MOUNTAIN PUB. CO., respondent, *v.* JACK, appellant.

CORPORATIONS — *Subscriptions to capital stock — Estoppel.*— A subscriber for certain shares of a corporation, by accepting the same and paying an assessment thereon, estops himself from denying the existence and validity of the contract of subscription.

SAME — *Subscription, when becomes binding.*— A subscription to certain shares in the capital stock of a corporation, to be thereafter organized, becomes a valid contract, binding upon the subscriber, upon the acceptance by him of the shares subscribed for.

*Appeal from Second District, Silver Bow County.*

STEPHEN DE WOLFE, for appellant.

This is an action brought by the respondent here, plaintiff in the court below, to recover the amount of two assessments made by the trustees of respondent on the stockholders of the corporation.

The action was brought originally in the probate court of Silver Bow county.

A general demurrer was filed to the complaint on the

ground that it did not state facts sufficient to constitute a cause of action.

The demurrer was overruled, and the defendant failing to answer within the time limited by law, the plaintiff had judgment by default according to the prayer of the complaint for $400 and costs taxed at $12.66.

The defendant thereafter appealed to the district court of Silver Bow county, and the demurrer interposed to the complaint being overruled in the last named court, and the defendant failing to further plead to the action, the judgment of said probate court was affirmed as to the damages awarded, and a judgment for costs, amounting to $15.15, was rendered June 15, 1883.

From this judgment the appellant filed the required notice and undertaking on appeal to this court.

I. The first defect in this complaint to which the attention of the court is called is the allegation, " That in contemplation of the incorporation of the Inter Mountain Publishing Company, and for the purpose of establishing, owning and maintaining the Inter Mountain newspaper then contemplated, the defendant, with others, on or about the 16th day of March, 1881, at Butte City, Montana, became a subscriber to the stock of said corporation by signing and delivering an agreement in writing, in words and figures following, to wit." See Transcript, p. 2.

This subscription by the defendant is the foundation and gist of the action. Yet the allegation is, that it was done in " contemplation " of the incorporation of the Inter Mountain Publishing Company. It was done, then, before that company had a legal or corporate existence, and, not having an existence, it could not be the recipient of a promise, or a party to a contract.

The word "contract," like most other words of legal import, has received different definitions by different writers, but perhaps the difference is in words rather than substance. All, however, agree that it requires at

least two parties to make a contract. Thus Metcalf, in his definition of a contract, says:

"The word, *ex vi termini*, imports more than one party; it is tautology in a professed definition to speak of an agreement between two or more parties." Metcalf on Contracts, p. 1.

Bishop defines it "as a promise from one to another" (p. 1), and in section 254 says: "More parties than one are essential to every contract."

Mutuality is essential in every contract, and mutuality could not exist between something uncreated and a natural person or other legal entity. 18 Barb. 297, 310; 55 id. 45; 11 Mass. 113; 8 Mass. 297; 35 Maine, 405; 53 Cal. 123; 47 Ind. 38.

In the present case, as in those of a number referred to, notably in that of *Philips' Academy* v. *Davis*, 11 Mass. 113, the court will observe that the promise declared on in the complaint is not one between the different subscribers to stock in the proposed corporation, but is a promise from the different subscribers to the corporation itself — something which did not then exist. The reasoning of the court in the Massachusetts case mentioned has, therefore, great force and pertinence. To the same effect, see 25 Ill. 34; 72 id. 397; 24 Barb. 518; 41 Am. Rep. 517.

II. The steps required in the formation of a corporation are clearly pointed out in section 244 of the fifth division of the revised laws. No mention is made of subscription to stock as a requirement or prerequisite in advance of the creation of the corporation, and the spirit and meaning of the act throughout seems to contemplate that subscriptions should be made to the capital stock after, and not before, the creation of the corporation. How else could a subscriber know what part or interest he was taking in the stock of a corporation, in advance of the number of shares and their value being fixed by the terms of the certificate mentioned in section 244?

The allegation that the defendant subscribed his name to a paper and wrote thereafter "one thousand dollars," this, taken alone and without further averment, is certainly not a subscription to any number of shares of stock, and the complaint contains no allegation which helps or explains this bare statement. It nowhere alleges that the $1,000 set opposite subscriber's name was equivalent to or intended as a subscription to any shares in the corporation. In all subsequent parts of the complaint, this $1,000 is treated as money only, and not as shares, and for aught that appears in the record, no one can tell whether the defendant was ever the subscriber or owner of any shares in the corporation.

III. The complaint is defective in not alleging the number of shares into which the capital stock of the corporation was divided, and that the whole number of shares had been subscribed for. These are essential allegations in order to maintain an action against a shareholder on calls or assessments on stock. 34 Md. 316; 36 Md. 476; Thompson on Liability of Stockholders, sec. 120.

IV. The complaint is further defective in not alleging that the assessment made May 21, 1881, of twenty per cent., was the only assessment or call made during that month. For aught that appears from the complaint, the $100 which the complaint alleges the defendant paid on his stock may have been levied or assessed in May, 1881. If so, the last assessment was unauthorized and illegal. Sec. 251, Corporation Act.

V. A demurrer admits only such facts as are issuable and well pleaded. 24 Cal. 585.

In *Green* v. *Palmer*, wherein the office of a demurrer is fully considered, the court say: If every fact essential to the claim or defense be not stated, the opposite party should demur. 15 Cal. 412; 37 Cal. 183; id. 523.

The rule applicable to a pleading is different where the opposite party raises objection to it, and when he proceeds to trial without objection.

In the former case the verdict in many cases cures the objection. In the other it does not.

The rule in the latter case is well stated by Mr. Justice Sanderson in *Abbidie* v. *Carillo*, 32 Cal. 170, in which he says: "The fundamental rule in our system of pleading requires a statement of the facts constituting the cause of action or defense in ordinary and concise language, so that the precise matters intended may appear on the face of the pleading, and the opposite party may not be put upon his outside knowledge for the purpose of ascertaining what it meant."

If this is a correct statement of the rule of pleading, the complaint in the present case is insufficient, and the judgment rendered on the complaint should be reversed.

KNOWLES & FORBIS, for respondent.

An agreement signed by an individual to take stock in a company not yet incorporated, but in contemplation, is a good agreement, and may be enforced by the corporation when it comes into existence. And this when there has been no subsequent acts on part of the subscriber ratifying or recognizing the contract. *Stanton* v. *Wilson*, 2 Hill, 153; *Buffalo & N. Y. City R. R. Co.* v. *Dudley*, 14 N. Y. 336; *Phœnix Warehousing Co.* v. *Badger*, 67 N. Y. 294; *Tonica & P. R. R. Co.* v. *McNeeley*, 21 Ill. 71; *Johnston* v. *Ewing Female University*, 35 Ill. 518; *Franklin Glass Co.* v. *Alexander*, 9 Am. Dec. 97 (note); *Athol Music Hall Co.* v. *Corey*, 116 Mass. 471; *Poughkeepsie & S. P. R. R. Co.* v. *Griffin*, 21 Barb. 454; *Christian College* v. *Hendley*, 49 Cal. 347.

How much more clearly is defendant bound on his contract in this case, where, as shown in the complaint and admitted by the demurrer, he has paid a part of his subscription, thus recognizing and admitting the contract after the incorporation of the company.

Defendant's demurrer to the complaint is a general one, the only ground assigned being that the complaint

does not state facts sufficient to constitute a cause of action. Under this demurrer the defendant cannot insist that his subscription of $1,000 did not sufficiently specify what number of shares he subscribed for. The contract, which is set out in full in the complaint, specifies the value of each share of stock. Under the contract, if defendant had set opposite his name one hundred shares, the amount in money of the subscription would necessarily have been $1,000, and having subscribed $1,000 in money, the number of shares subscribed by him could not be other than one hundred. If this is a defect at all, it is not one of substance, and should have been taken by special demurrer or motion to make more certain, and the defendant, having failed so to do, waived all objections to the complaint. Moak's Van Santvoord's Pl. 756; *Richards* v. *Edick,* 17 Barb. 260.

The contract on which this action is founded does not specify the number of shares of capital stock of the corporation. That is specified in the articles of incorporation, and at the time of this subscription was a matter yet to be determined; and as defendant by his subscription became entitled to attend the meeting for incorporation, it is reasonable to suppose that he was there and acquiesced in what was done; and certainly, if he did not agree to the action of the incorporators in settling the number of shares, so far as the record shows he made no objection thereto. If there are shares of the corporation yet unsubscribed for, defendant has waived his right to object by accepting his stock and paying the first call thereon.

At any rate, this is not matter to be averred in the complaint; but if any such state of facts exist, as defendant supposes in his brief, they are properly matters of defense to be set up in the answer.

If there were other calls on the stock in May, 1881, further than the one alleged in plaintiff's complaint, that also is proper matter for defense. The court has no rea-

son to suppose, in the absence of allegations or proof, that the trustees of the corporation have exceeded their powers or violated a provision of law.

COBURN, J. This is an action brought by the Inter Mountain Publishing Company to recover the amount of the assessments made by the company against the defendant as one of the stockholders. The defendant demurred to the complaint; the demurrer was overruled, and judgment rendered in favor of the plaintiff for the sum of $400, the amount of the two assessments. The defendant appeals to this court.

It appears by the complaint that the plaintiff is, and has been for some time past, a corporation organized under the laws of Montana; that, in contemplation of the incorporation of said company, and of establishing and conducting its business, the defendant, with others, on or about the 16th day of March, 1881, became a subscriber to the stock of said corporation by signing and delivering an agreement in writing as follows:

"We, the undersigned, agree and promise to take and pay for, at the rate of $10 per share, as the assessments may be lawfully made, the number of shares of the capital stock of the Inter Mountain Publishing Company set opposite our respective names."

That defendant, when he signed this agreement, set opposite to his name the sum of $1,000, which amount he thereby agreed to pay to the company. That afterwards the defendant accepted said stock and paid thereon the sum of $100 upon an assessment and call duly made by the trustees of the company.

That, on the 21st day of May, 1881, the plaintiff, by its trustees, called in and demanded from the stockholders of said incorporation twenty per cent. of all money subscribed by them respectively, and, by such call and demand, required the defendant to pay on his subscription the sum of $200, being twenty per cent. of the

amount subscribed by him. It is further averred that, on the 9th day of December, 1881, the trustees made another call, in like manner, for an equal amount, being twenty per cent. of the subscription. That the defendant was duly notified of these calls, and that he has not paid any part of them, and that the plaintiff has performed all the conditions on its part.

It is insisted by the appellant, the defendant below, that this agreement set out in the complaint is not a contract, for the reason that there are no parties to it, the corporation not being in existence at the time. This agreement is in the nature of a promise between the subscribers "to take and pay for" certain shares in the company when it should be formed, and could only be enforced when it had been legally incorporated. And when it had been organized, then, under proper circumstances, the contract was capable of being enforced.

Among these circumstances is one set out in the complaint, and that is, the ratification of this agreement by the defendant in accepting $1,000 in stock and paying $100 to the company thereon. By this acceptance of stock and payment of money, the defendant has placed himself in a position where he cannot deny the existence and validity of the contract of subscription, which is to pay $1,000 upon shares in the Inter Mountain Publishing Company at the rate of $10 a share as the assessments should be lawfully made. In addition, there is a sufficient consideration for this promise.

In a similar case, *Athol Music Hall Company* v. *Corey,* 116 Mass. 471–474, the court say: "The corresponding agreements of the other subscribers; the organization of the corporation, and the allotment to the defendant of the shares for which he subscribed, furnish sufficient consideration for his promise to take and pay for those shares. Although his promise was originally voluntary, or in the nature of a mere open proposition, yet having been accepted and acted on by the party authorized so

to do, before he attempted to retract it, he has lost the right to revoke. His proposition has become an accepted mutual contract, and is binding upon him as well as upon the corporation."

In looking at the subscription, it will be seen that it is not for any number of shares, but for $1,000. Is this subscription such an one as the agreement contemplated? By its terms, each share was to be paid for with $10; the promise was to pay this sum, no more and no less, for each share. The act to be performed by the subscriber was to pay money; the act to be performed by the company was to issue and deliver to him the shares which he agreed to take. The essence of the subscriber's contract was to pay money for shares. When, therefore, he agreed to pay $1,000, he had done the important and essential part incumbent on him in making the subscription. It was, in effect, under the terms of the agreement, subscribing for one hundred shares; these shares being equivalent to the money, and *vice versa*. His subsequent conduct in accepting the stock confirms this contract of subscription. But if this is a defect, it is the subject of special demurrer only. Moak's Van Santvoord's Pl. 756; *Richards* v. *Edick*, 17 Barb. 260.

A further objection is made to the complaint that it does not allege the number of shares into which the capital stock of the corporation was divided, and that the whole number of shares had been subscribed for. It does not appear in the contract that the subscription was made upon the condition that a certain number, or all, of the shares should be subscribed for before calls could be made. At the time of making the contract the number of shares had not been determined; but it is to be presumed that this had been done at the time of the organization, inasmuch as the averment is found in the complaint and admitted by the demurrer, that the plaintiff was a corporation legally organized. And the payment of an instalment by the defendant without objection is

a sufficient recognition of the legal existence of the corporation to enable it to recover subsequent assessments. The acceptance of the stock and the payment of the assessment thereon is a waiver of the objection that otherwise might have been urged upon the ground that all the shares had not been taken, if such was the fact.    See Thompson's Liability of Stockholders, sec. 120.

The appellant further insists that the complaint is defective in not alleging that the assessment made on the 21st day of May, 1881, of twenty per cent., was the only assessment or call made during that month; since the statute (R. S. sec. 251, p. 452) provides that not to exceed twenty per cent. in any one month shall be called in upon any subscription from the stockholders.    As to this, it is to be presumed that the plaintiff acted in accordance with the law, and within the scope of the authority conferred by the statute.    The defendant would, in such a case, have equal knowledge with the plaintiff of the facts, and if more than one call had been made in the month of May, that was a proper matter of defense.

We think the demurrer was properly overruled.

Judgment affirmed.