DESCHAMPS ET AL., RESPONDENTS, *v.* LOISELLE, APPELLANT.

(No. 3,499.)

(Submitted April 1, 1915. Decided April 26, 1915.)

[148 Pac. 335.]

*Corporations—Contracts — How Enforced — Directors—Powers and Duties—Stockholders—Right to Sue.*

Corporations—Contracts—How Enforced.
  1. Like the agreement to take stock in a corporation to be formed, so one to the effect that the cost of constructing an irrigation project and the expense of maintaining it should be distributed among the stockholders in proportion to the number of shares held by each, is not a contract between the shareholders enforceable by one or more of them against the others, but one enforceable only by the corporation.
  [As to when corporation must carry out contracts of promoters or members, see note in 13 Am. St. Rep. 28.]

Same—Directors—Duties not Delegable.
  2. Though it is competent for the directors of a corporation to conduct its business through duly authorized agents, they cannot abdicate their duties nor permit others to act in their stead for the corporation or the stockholders.
  [As to actions by corporation on behalf of stockholders, see note in 97 Am. St. Rep. 29.]

Same—Stockholders cannot Sue, Until When.
  3. Stockholders cannot sue on behalf of the corporation until they have applied to the officers and directors for relief and have met with a refusal, or it is apparent that application to them for relief would be useless.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

ACTION by Gaspard Deschamps and others against Philias Loiselle. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Mr. Theodore Lentz,* for Appellant, submitted a brief; *Mr. Derwood Washington,* of Counsel, argued the cause orally.

Before stockholders may have recourse to the courts for redress of their grievances as to corporate affairs, they must first exhaust their remedy within the corporation itself. (*Brandt* v. *McIntosh,* 47 Mont. 70, 130 Pac. 413.)

By-laws adopted before incorporation are invalid. (Machen on Corporations, sec. 689; *Vercoutere* v. *Golden State Land Co.,* 116 Cal. 410, 48 Pac. 375; *Boston Acid Mfg. Co.* v. *Moring,* 15 Gray (Mass.), 211, 214; Rev. Codes, sec. 3829.)

The agreement in question is one between prospective stockholders to form a corporation, and is supported by the mutual promises of each until the corporation is launched, after which time all the rights and obligations created by it are merged into and supported by the new rights and liabilities of stockholder and corporation. (9 Cyc. 595; Thompson on Corporations, 2d ed., sec. 543.) Agreements of this nature have come before the courts most frequently in suits by corporations on agreements to take stock made by prospective stockholders among themselves before the corporation came into existence. (*Intermountain Pub. Co.* v. *Jack,* 5 Mont. 568, 6 Pac. 20; *Athol Music Hall Co.* v. *Carey,* 116 Mass. 471; *Penobscot R. R. Co.* v. *Dummer,* 40 Me. 172, 63 Am. Dec. 654; *Minneapolis Threshing Machine Co.* v. *Davis,* 40 Minn. 110, 12 Am. St. Rep. 701, 3 L. R. A. 796, 41 N. W. 1026; *Branch* v. *Augusta Glass Works,* 95 Ga. 573, 23 S. E. 128; *Edinboro Academy* v. *Robinson,* 37 Pa. St. 210, 78 Am. Dec. 421; *Security State Bank* v. *Raine,* 31 Neb. 517, 48 N. W. 262; *Marysville Elec. Light & Power Co.* v. *Johnson,* 93 Cal. 538, 27 Am. St. Rep. 215, 29 Pac. 126; *Ashuelot Boot etc. Co.* v. *Hoit,* 56 N. H. 548; *San Joaquin Land & Water Co.* v. *West,* 94 Cal. 399, 29 Pac. 785; *San Joaquin Land & Water Co.* v. *Beecher,* 101 Cal. 70, 35 Pac. 349.)

*Messrs. Woody & Woody* and *Messrs. Tolan & Gaines,* for Respondents, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action to recover for moneys paid out by plaintiffs for the use and benefit of defendant. It is sought to fix liability upon the defendant under the terms of a written agreement which was entered into by some of the plaintiffs, the predecessors of others, and the defendant on November 22, 1901, the provisions of which, omitting formal parts, are the following:

"Whereas, all of the persons above named are desirous of forming a corporation under the incorporation laws of the state of Montana, to be known as 'Grass Valley French Ditch Company,' for the purpose of acquiring a right to use the waters of the Hell Gate river for agricultural, mechanical and other useful and beneficial purposes, and to build a dam on the land of Alex Jette for the purpose of diverting said water from said river, and to building a ditch to carry the same from said place of diversion to Grass Valley, and from that point to build two ditches to be known as the 'Upper Ditch' and 'Lower Ditch' for the purpose of conveying the water on to the lands of the above named parties;

"Now, therefore, the said parties do hereby mutually agree each with the other, for and in consideration of the mutual advantage to be derived by each from the formation of said corporation and the building of said ditches, and bind ourselves jointly and severally to do and perform each the matters and things hereinafter mentioned and contained as follows:

"The said Alex Jette agrees with each of the other parties hereto that he will furnish for the use and benefit of said corporation hereafter to be formed as aforesaid, a site and place on his land on the Hell Gate river for the construction of a dam and headgate to take the water from said Hell Gate river to supply said ditch and ditches to be built and constructed as

aforesaid, and to furnish said dam site free of cost to said corporation and free of cost to the parties to this agreement.

"And that each and every one of the parties to this agreement mutually agree, each with the other, and promise to the effect; that in case said ditch or ditches, to be built and constructed as aforesaid, shall pass over or across any of the land or lands of any of the parties to this agreement that each of said parties whose land or lands said ditch or ditches shall pass over or across shall, free of charge, donate to said corporation a right of way for said ditch, or ditches and shall as soon as the line of said ditch or ditches is surveyed and definitely located, make, execute and deliver to said corporation a good and sufficient deed for said right of way.

"And it is further agreed by and between the parties hereto, that each of the parties who shall sign this agreement, shall bind himself and by these presents does bind himself to subscribe for, take and pay for the number of shares of stock in said ditch company as is set opposite his name to this agreement, and at the price of Five Dollars ($5.00) for each share, one-half of the price of said shares to be paid in cash, and the other one-half to be paid in work on said dam and ditches, at a price for said work to be hereafter fixed by the board of trustees of said ditch company, but with the privilege of paying the whole amount in cash.

"And it is further mutually understood and agreed by each and all of the parties to this agreement that each share of stock of said company shall represent one inch of water, and that each share of stock of said company shall be of the par value of Five Dollars ($5.00).

"And it is further mutually agreed and understood by and between the parties to this agreement that the cost of surveying said ditch or ditches, and the building of the dam and headgate to take the water from said Hell Gate river shall be paid for by all the parties holding stock in said company and that each shall pay the cost of the same in proportion to the number of shares of stock which he shall hold in said ditch company.

"And that each stockholder shall pay his proportionate share of the construction of said ditch, or ditches, from the point where the water leaves the headgate at the dam, down to the point where the ditch reaches the lower line of the land of each stockholder; said cost to be apportioned to each stockholder in proportion to the number of shares in said ditch company held by him; provided, however, that Alex Jette shall only be required to pay his proportionate part of the construction of said ditch from the point where the water leaves said headgate down to the point where he takes his water from said ditch; and that all repairs that shall be made upon said ditch from time to time shall be apportioned and paid in the same manner as the cost of construction said ditch was apportioned and paid," etc.

The corporation was organized, and the construction work necessary to effectuate its purpose having been done, it has since continued to be and now is a body corporate. Of the plaintiffs, only nine were among the original parties to the agreement. Altogether they own all the shares of stock (3,605) issued at the date of the organization, except 325 shares owned by defendant. He was among the original parties to the agreement, subscribing for 100 shares. He subsequently acquired 225 shares from two others of the original parties. The complaint, after reciting in substance the foregoing, alleges: That in the spring of 1911, it became necessary to make certain repairs on the ditches and their appurtenances; that the plaintiffs, in pursuance of the agreement, employed the teams and laborers required, furnished the necessary material and caused the repairs to be made at a reasonable and necessary cost of $3,958.52; that thereafter the total cost was apportioned among the several plaintiffs and the defendant, the amount charged to each being determined by the number of shares owned by him, as provided in the agreement; that the amount due from the defendant thus ascertained was the sum of $323.14; that the plaintiffs paid this amount for the use and benefit of the defendant, and that, though demand was made upon him for reimbursement, defendant refused to comply. In

a second count, plaintiffs seek recovery of the sum of $88.99, defendant's proportionate share of expenditures for repairs made by plaintiffs upon the ditches and appurtenances during the year 1913. The trial court, having overruled demurrers interposed to each count, the defendant declined to plead further. Thereupon his default was entered and judgment was rendered for plaintiffs for both the amounts demanded, with interest thereon from the respective dates upon which defendant refused payment. The defendant has appealed from the judgment.

The complaint does not disclose the amount of the capital stock of the corporation, nor the number of shares represented by it, nor the number of shares which have been issued, nor whether there are shareholders other than the plaintiffs and the defendant. It does not appear whether the expenditures for repairs were authorized by the board of directors or not; nor is there any allegation that the plaintiffs have sought redress through the corporate authorities. The theory of the action is that by signing the agreement, each of the original parties bound himself to all of the others to contribute to the maintenance of the corporate enterprise without the necessity of consulting the corporate authorities. In other words, while the agreement contemplated the formation of the corporate body which was to become the owner of the dam site, the rights of way, the ditches and the usufruct of the water, the management of its affairs, in so far as is necessary to provide for the expense of maintenance is concerned, is in the exclusive control of the original signers of the agreement. It is to be noted, too, that this theory involves the assumption that anyone who has acquired, by purchase or otherwise, shares of stock from one of the original parties, *ipso facto* becomes bound by the agreement, and that, too, without any stipulation therein to that effect. If this is the correct view of it, the corporation has nothing to do with the control and maintenance of its property. The parties to the agreement for themselves and their successors as stockholders, retain control. Except to authorize the bring-

ing and defending of actions to protect the property, the board of directors is without authority, and the code of by-laws a useless form, except perhaps to control the distribution of water. The result is the anomaly of a corporation fully organized, with the officers designated by law for the control of its affairs, without any authority to do so; for the agreement as construed by the plaintiffs must be held exclusive upon the subject of maintenance and the mode of enforcing contribution from the stockholders.

The agreement is twofold. It amounts to a subscription to the stock of the corporation to be thereafter formed, and an **[1]** agreement that the cost of accomplishing the undertaking and that incident to its maintenance must be distributed among the stockholders in the proportions indicated. Now, it is well settled that a preliminary agreement to form a corporation and to take stock in it is not a contract by the subscribers with each other, enforceable by one or more of them against the other. Such an agreement can be enforced by the corporation only, and this is true whether the agreement is expressly authorized by statute or not. (Thompson on Corporations, 2d ed., sec. 543.) This was recognized as the settled rule by the supreme court of the territory of Montana in the early case of *Intermountain Pub. Co.* v. *Jack*, 5 Mont. 568, 6 Pac. 20. Until the proposed corporation is formed, the promise of the subscriber is in the nature of an open offer to the corporation, which may or may not be accepted; but if it has been accepted and acted upon by the subscribers or the person or persons authorized to form the corporation, the law implies an acceptance by the corporation and it then becomes irrevocable. (*Intermountain Pub. Co.* v. *Jack, supra; Athol Music Hall* v. *Carey*, 116 Mass. 471; *San Joaquin Land & W. Co.* v. *Beecher*, 101 Cal. 70, 35 Pac. 349; *Edinboro Academy* v. *Robinson*, 37 Pa. St. 210, 78 Am. Dec. 421.)

The promise as to the expense of construction and maintenance stands upon the same footing as the promise to take stock; there is nothing to indicate any other intention. On the con-

trary, every other obligation assumed by any of the parties would have been enforceable by the corporation only. It cannot be questioned that the corporation alone could have enforced the stipulation by Jette to furnish the dam site and the agreement of the other parties to grant rights of way, the same as the respective agreements to take and pay for stock. Indeed, it seems manifest that the real purpose was to impose upon the corporate authorities the obligation to pursue the method outlined in the agreement in providing for the cost of the enterprise, all the parties recognizing the fact that, inasmuch as some of them would use water at a greater distance from the head of the ditch than would others, they should bear a proportionately larger share of the cost of the preliminary and the subsequent outlay. Whether this could be legally done by by-law or resolution we need not now stop to inquire. It is sufficient to say that the intention was to bind the corporation to this course and not to impose mutual liability to each other, upon the individual signers of the agreement. That the parties evidently intended to do this is conclusive against the notion that they can maintain this action as upon a mutual promise, each to the other, that they would personally manage and control the business of the corporation.

Aside from this consideration, there is a conclusive reason why plaintiffs cannot maintain the action. Section 3833 of the [2] Revised Codes expressly declares: "The corporate powers, business and property of all corporations formed under this title must be exercised, conducted and controlled by a board of not less than three nor more than thirteen directors, to be elected from among the holders of stock, or where there is no capital stock, then from the members of such corporations." It further provides that "unless a quorum (a majority of the directors) is present and acting, no business performed or act done is valid as against the corporation." While it is entirely competent, indeed often necessary, for the directors to manage and conduct the business of the corporation through duly authorized agents, the directors themselves are the agents ulti-

mately responsible. They, therefore, cannot abdicate their duties nor permit others to act in their stead for the corporation or the stockholders. This would be in direct violation of the injunction of the statute, which, being exclusive, is also mandatory. If the construction of the agreement contended for by counsel, and adopted by the trial court, should be upheld, the statute would be set aside. It would be a possible, nay a probable, result that any one or more of the stockholders, deeming it necessary to make repairs, would, without the consent of the others or even against their protest, procure the expenditure of labor and the furnishing of material, the price for which would become a lien upon the property of the corporation under the statute (Rev. Codes, sec. 7290), and it would thus be encumbered without the consent either of a majority of the stockholders or the directors. Therefore, whatever purpose the signers of the agreement had in mind, it may not be given the construction for which counsel contend.

It is clear, also, that the action cannot be maintained as one brought in behalf of the corporation, because it does not purport to be such. It is no longer open to question in this jurisdiction that stockholders have no standing in court to sue on behalf of the corporation until they have applied to the officers and directors for relief and have been answered by a refusal, or the course of conduct being pursued by the latter is such as would render an application for relief fruitless. (*McConnell* v. *Combination Min. & M. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *Brandt* v. *McIntosh,* 47 Mont. 70, 130 Pac. 413; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071; *Kleinschmidt* v. *American Min. Co.,* 49 Mont. 7, 139 Pac. 785.)

The judgment is reversed and the cause is remanded, with directions to sustain the demurrers.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.