ALLEN ET AL., APPELLANTS, *v.* MONTANA REFINING CO.
ET AL., RESPONDENTS.

(No. 5,484.)

(Submitted June 18, 1924. Decided July 1, 1924.)

[227 Pac. 582.].

*Foreign Corporations — Minority Stockholders' Suit—Injunction—Receivership—Proper Refusal to Take Jurisdiction—"Preferred Stock"—Promissory Notes—Want of Consideration—Pleading—Legal Conclusions.*

Foreign Corporations—Interference With Management of Internal Affairs by State Courts not Permissible.
1.   The courts of this state will not decide controversies relating to the management of the internal affairs of a corporation organized under the laws of another state and doing business in Montana, even though the action be brought by a resident stockholder, such questions being determinable by the tribunals of the state where it was created, the rule being otherwise where the acts complained of affect plaintiff's individual rights only.

Same—Acts Done in "Management of Its Internal Affairs"—Definition.
2.   To bring the act complained of by a stockholder against a foreign corporation within the purview of one done in the "management of its internal affairs" (par. 1 above) it must have affected him solely in his capacity as a member of the corporation and have been done by the corporation at a stockholders' meeting or by its board of directors.

Corporations—Domicile in State of Creation.
3.   The domicile of a corporation is within the state of its creation.

Foreign Corporations—Interference With Management of Internal Affairs —What Constitutes.
4.   *Held,* that the act of the directors of a foreign oil refining corporation in transferring all of its common stock in exchange for certain options upon land affected plaintiff preferred stockholders in their capacity as such only and did not affect their individual rights, and that therefore their complaint asking, *inter alia,* that the transfer be set aside on the ground of fraud involved an interference with the management of the internal affairs of the corporation, was properly dismissed.

Judgments—Courts will not Grant Relief Which cannot be Enforced.
5.   Courts will not grant relief which they are unable to enforce; hence the trial court properly refused to take jurisdiction of a cause which involved the surrender of stock certificates of a foreign corporation held by nonresidents and an adjudication that the certificates were invalid in the hands of parties not before the court and not parties to the action.

1.   Court interference with internal affairs of foreign corporations, see notes in 19 **Ann. Cas.** 84; **Ann. Cas.** 1913E, 457; **Ann. Cas.** 1917A, 389; **Ann. Cas.** 1917B, 637.

Corporations—Right of Stockholders to Vote at Elections of Directors—Constitution.

6. *Held* that section 4, Article XV of the state Constitution, declaring that every stockholder shall have the right to vote his shares at elections for directors, refers exclusively to domestic corporations.

Same—"Preferred Stock"—Definition.

7. "Preferred stock" is stock which gives to the holder a preference over the holder of common stock with respect to the payment of dividends.

Same—Preferred Stockholders—Relation One of Contract.

8. The relation between a corporation and the holder of its preferred stock is one of contract, the terms of the contract to be ascertained from the certificate read in connection with the general laws of the state, the articles of incorporation and the by-laws.

Same—Right of Preferred Stockholders to Vote Stock—Matter of Contract.

9. In the absence of constitutional or statutory provision to the contrary, a corporation may in its articles of incorporation or by-laws provide that its preferred stock shall not entitle the holder to vote, and where it does so provide a court of equity may not create a new contract for the parties by in effect changing its articles or amending its by-laws, so as to permit the holder to vote his preferred stock.

Same—Promissory Notes—Lack of Consideration—Complaint—Legal Conclusions—Insufficiency.

10. Allegation of the complaint in an action to have promissory notes of a corporation decreed as having been given without consideration, to the effect "that said pretended indebtedness is fictitious and sham," *held* a mere conclusion of the pleader in the absence of a statement of facts upon which the conclusion was based, and therefore insufficient.

Same—Minority Stockholders' Suit—Prerequisite to Right to Sue.

11. In a minority stockholders' suit brought in behalf of the corporation, plaintiffs have no standing in court unless they can show that they have first applied for relief to the managing officers, or, failing in this, time permitting, have appealed to the stockholders, without avail.

Same—Injunction — Removal of Corporate Records — Complaint — Insufficiency.

12. Application for an injunction to prevent the directors of a corporation from removing its records beyond the jurisdiction of the court *held* insufficient for failure to allege that the defendants, or any of them, were removing or threatening to remove, or would remove the records if the injunction be not granted.

Same—Receivership—Nature of Remedy—Complaint—Insufficiency—Denial of Application Proper.

13. Receivership is a provisional remedy of ancillary character, allowable only in an action pending for some other purpose in which

---

9. Right of holder of preferred stock to vote at corporate meetings, see notes in 4 Ann. Cas. 567; 2 L. R. A. (n. s.) 121.

11. Necessity of applying to body of stockholders as a condition of right of stockholder to sue on behalf of corporation, see notes in 97 Am. St. Rep. 29; Ann. Cas. 1914A, 782; 51 L. R. A. (n. s.) 112.

13. When appointment of receiver is proper, see note in 72 Am. St. Rep. 29.

issues are to be determined even though the application for the appointment of a receiver be denied; hence where the complaint for the primary relief does not state a cause of action refusal to appoint a receiver is not error.

*Appeal from District Court, Yellowstone County, in the Thirteenth Judicial District; Joseph R. Jackson, a Judge of the Second District, presiding.*

ACTION by W. A. Allen and others against the Montana Refining Company and others. From a judgment for defendants and an order refusing to appoint a receiver, plaintiffs appeal. Affirmed.

*Mr. George W. Pierson,* for Appellants, submitted a brief and argued the cause orally.

All the property of the corporation being situated within the state of Montana and all business of the corporation being transacted here, it is domiciled here and the courts of this state have the right to determine the legality of the issue of the corporate stock, the rightful owners thereof, and the extent such stock represents the corporate undertaking. (*Gallatin Valley Farmers' Alliance* v. *Flannery,* 59 Mont. 534, 197 Pac. 996; *Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497; *Wait* v. *Kearn River Milling etc. Co.,* 157 Cal. 16, 106 Pac. 98; *Stapler* v. *El Dora Oil Co.,* 27 Cal. App. 516, 150 Pac. 643; *Harris* v. *Mid Continent L. Ins. Co.,* 75 Okl. 105, 182 Pac. 85; *Lockwood* v. *United States Steel Corp.,* 209 N. Y. 375, L. R. A. 1915C, 471, 103 N. E. 697; *Young* v. *South Tredegar Iron Co.,* 85 Tenn. 189, 4 Am. St. Rep. 752, 2 S. W. 202; *Jennings* v. *Rocky Bar Gold Mine Co.,* 29 Wash. 726, 70 Pac. 136; *Taylor* v. *Citizens' Oil Co.,* 182 Ky. 350, 206 S. W. 644.)

The supreme court of Minnesota adverting to the statement that courts will not assume jurisdiction of a case involving the right to stock in a foreign corporation because the subject relates to the internal management, says: "Such general statements must always be construed in connection with the particular facts of the cases in which they are used. Moreover,

such statements are not strictly correct as abstract proposi-
tions in the broad and unqualified sense in which they are
sometimes understood. If upon principles of law or comity
foreign corporations are allowed to do business and maintain
suits in another state, the general rule should be that they
are liable to be sued in the same jurisdiction.'' (*Guilford* v.
*Western Union Tel. Co.*, 59 Minn. 332, 50 Am. St. Rep. 407,
61 N. W. 324; *Lively* v. *Huseby,* 60 Wash. 47, 110 Pac.
673.)

The only objection heretofore urged by the respondents to
the sufficiency of the complaint is one of jurisdiction. Where
it is made to appear that the managing officers of the cor-
poration are participating in or are benefiting from the
wrongful acts complained of, stockholders may bring their ac-
tion without first making a demand upon such officers. (*Hawes*
v. *Oakland,* 104 U. S. 450, 460, 26 L. Ed. 827 [see, also, Rose's
U. S. Notes]; *Columbia Nat. Sand D. Co.* v. *Washed Bar
Sand D. Co.,* 136 Fed. 710.) Preferred stockholders have the
right to question the legality of the issue of common stock.
(*Scully* v. *Automobile Finance Co.,* 11 Del. Ch. 355, 101 Atl.
908; *Howard* v. *National Tel. Co.,* 182 Fed. 215. Fletcher on
Corporations, sec. 3637.) A promoter sustains a fiduciary re-
lation to the corporation. (*American Forging & Socket Co.*
v. *Wiley,* 206 Mich. 664, 173 N. W. 515; *Frame* v. *Mahoney,*
21 Ariz. 282, 187 Pac. 584.) Directors occupy a fiduciary
relation to the corporation and its stockholders. (*Barker* v.
*Montana etc. Mining Co.,* 35 Mont. 351, 89 Pac. 66; *Gerry*
v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *Twinlick Oil
Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 328 [see, also, Rose's
U. S. Notes]; *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 17
L. R. A. 412, 53 N. W. 218; *Bentley* v. *Zelma Oil Co.,* 76
Okl. 116, 184 Pac. 131; *Cahall* v. *Lofland,* 12 Del. Ch. 299,
114 Atl. 224.) Officers or others may not cause issue of stock
for the purpose of controlling the corporation. (*Essex* v.
*Essex,* 141 Mich. 200, 104 N. W. 622; *Paducah Land etc. Co.*
v. *Mulholland,* 14 Ky. Law Rep. 861; *Miner* v. *Belle Isle Ice
Co.,* 93 Mich. 97, 17 L. R. A. 412, 53 N. W. 218; *Way* v.

*American Grease Co.,* 60 N. J. Eq. 263, 47 Atl. 44.) Directors and promoters may not deal with themselves and take secret profits. (*Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *Barker* v. *Montana Gold etc. Min. Co.,* 35 Mont. 351, 89 Pac. 66; *Hanson Sheep Co.* v. *Farmers' etc. Bank,* 53 Mont. 324, 163 Pac. 1151; *Twinlick Oil Co.* v. *Marburg,* 91 U. S. 587, 23 L. Ed. 328 [see, also, Rose's U. S. Notes].) The fraud could not be waived by the directors. (Fletcher on Corporations, sec. 2001.) Defendants knew of the illegal acts before they acquired the stock through which they now wrongfully control the corporate officers, against the interests of the corporation. The illegal stock is not validated by subsequent transfer. (*Gallatin County Farmers' Alliance* v. *Flannery,* 59 Mont. 534, 197 Pac. 996.)

The following authorities establish the right of appellants to à receiver under the facts pleaded. (*Ellis* v. *Penn Beef Co.,* 9 Del. Ch. 213, 80 Atl. 666; *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 17 L. R. A. 412, 53 N. W. 218; *Doe* v. *Northwest Coal & Transp. Co.,* 64 Fed. 928; *Hampton* v. *Buchanan,* 51 Wash. 155, 98 Pac. 374; *Columbia National Sand D. Co.* v. *Washed Bar Sand D. Co.,* 136 Fed. 710; *Cantwell* v. *Columbia Lead Co.,* 199 Mo. 1, 97 S. W. 167; *Bates* v. *Werries,* 198 Mo. App. 209, 199 S. W. 758.)

*Mr. C. W. Buntin* and *Messrs. Campbell & Carolan,* for Respondents, submitted a brief; *Mr. Buntin* and *Mr. T. W. Carolan* argued the cause orally.

A court has no jurisdiction to appoint a receiver of a foreign corporation and to invest him with power to liquidate the affairs of a foreign corporation. (*Sidway* v. *Missouri Land & Live Stock Co.,* 101 Fed. 481; *Leary* v. *Columbia River & P. S. Nav. Co.,* 82 Fed. 775; *Acken* v. *Coughlin,* 103 App. Div. 1, 92 N. Y. Supp. 700; *State* v. *Denton,* 229 Mo. 187, 138 Am. St. Rep. 417, 129 S. W. 709; *Babcock* v. *Farwell,* 245 Ill. 14, 137 Am. St. Rep. 284, 19 Ann. Cas. 74, 91 N. E. 683; *Dreyfus* v. *Charles Seale Co.,* 37 App. Div. 351,

55 N. Y. Supp. 1111; *Heitkamp* v. *American P. & C. Co.*, 158 Ill. App. 587; *Stacey* v. *McNicholas*, 76 Or. 167, 148 Pac. 67.)

The granting of the relief contended for by appellants would be tantamount to a dissolution of the corporation, for if, as appellants maintain, a receiver should be appointed, the affairs of the corporation thoroughly gone into and revised, and the preferred stock given the right to vote, then certainly the corporation would no longer maintain any vestige of its former character. A court will not entertain jurisdiction to enjoin the business of a foreign corporation where the injunction would practically suspend the corporate franchise. (*Way* v. *Keyport & M. P. S. B. Co.*, 16 Abb. Pr. (N. Y.) 320.)

Courts will not, in a suit by a resident stockholder against a foreign corporation, set aside unwise, dishonest and useless contracts which depreciate and destroy the value of the stock, even though the tangible property of the corporation is situate in the state of the domestic court, and it has been held that the question of whether a contract is disadvantageous to a foreign corporation is a question dealing with the internal affairs and management thereof. (*Madden* v. *Penn Electric Light Co.*, 181 Pa. St. 617, 38 L. R. A. 638, 37 Atl. 817; *Patterson* v. *Lynde*, 112 Ill. 196; *Hallenborg* v. *Greene*, 66 App. Div. 590, 73 N. Y. Supp. 403; *Howard* v. *Mutual Reserve Fund L. Assn.*, 125 N. C. 49, 45 L. R. A. 853, 34 S. E. 199; *Edwards* v. *Schillinger*, 245 Ill. 231, 137 Am. St. Rep. 308, 33 L. R. A. (n. s.) 895, 91 N. E. 1048; *Remington* v. *Samana Bay Co.*, 140 Mass. 494, 5 N. E. 292; *Babcock* v. *Farwell*, 245 Ill. 14, 137 Am. St. Rep. 284, 19 Ann. Cas. 74, 91 N. E. 683; *North State C. & G. Min. Co.* v. *Field*, 64 Md. 151, 20 Atl. 1039; *McCloskey* v. *Snowden*, 212 Pa. St. 249, 108 Am. St. Rep. 867, 61 Atl. 796.)

In the absence of a constitutional or statutory provision establishing a contrary policy it is competent for the charter or by-laws of the corporation to deprive the preferred

stock of voting power. (*Hamlin* v. *Toledo etc. Ry. Co.,* 78
Fed. 664, 36 L. R. A. 826, 24 C. C. A. 271; *Brewster* v. *Hart-*
*ley,* 37 Cal. 15, 99 Am. Dec. 237; *State* v. *Swanger,* 190 Mo.
561, 2 L. R. A. (n. s.) 121, 89 S. W. 872; *People* v. *Keonig,*
133 App. Div. 756, 118 N. Y. Supp. 136; *Miller* v. *Ratter-*
*man,* 47 Ohio St. 141, 24 N. E. 496.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

The Montana Refining Company is a corporation organized
under the laws of Delaware, and has complied with the laws
of this state under which a foreign corporation is permitted
to do business here. Its authorized capital is represented by
5,000 shares of preferred stock of the par value of $100 each,
and 50,000 shares of common stock without any fixed par
value. The preferred stock is entitled to twelve per cent divi-
dends from the earnings, and to be redeemed on or after
January 1, 1923, but the holder of preferred stock is not
entitled to vote such stock or to participate in the management
of the affairs of the company. Of the shares of preferred
stock, 1,472 were sold at par, and of that number these plain-
tiffs own 915 shares. The company acquired a refining plant
in Yellowstone county, and for a time engaged actively in the
oil-refining business at a profit, but later practically aban-
doned the business and to all intents and purposes became a
mere distributing agent for a former competitor in the refin-
ing business. It ceased to make any profits, became in debt,
failed to pay any dividends and failed to redeem any of the
preferred stock. This action was instituted in the district
court of Yellowstone county by the Montana holders of pre-
ferred stock, for themselves and for all others similarly
situated.

Briefly summarized, the complaint charges that the defend-
ant Hortenstein, who was the promoter of the company, and
Molt, Winne, Brown, Grimstad, Gallagher, Shawhan and Cat-
latt entered into a conspiracy to defraud the company and

the holders of preferred stock, and to that end caused the company to be incorporated under the laws of Delaware by three dummy stockholders, none of whom paid anything for the stock he assumed to own at the time the articles of incorporation were executed and filed; that the incorporators held a stockholders' meeting at Wilmington, Delaware, in October, 1920, at which meeting by-laws were adopted and Molt, Winne, Brown, Grimstad and Gallagher were elected directors; that Grimstad and Gallagher resigned soon afterwards, and Shawhan was appointed a director; that the board as thus constituted assumed to issue to Hortenstcin certificates representing all of the common stock, in exchange for certain options upon, and other interests in, real estate held by him, none of which property was of any value; that thereafter Hortenstein retransferred 5,000 shares of the common stock to the treasury of the company and conveyed 2,500 shares each to Molt, Winne, Brown, Shawhan and Catlatt, the only consideration therefor being the assistance which they should render in carrying out the conspiracy; that in June, 1922, defendant H. V. Book owned a majority of the stock of the Century Oil Company and the Lewistown Oil & Refining Company, each a Delaware corporation, and the latter engaged in oil refining in this state, in active competition with the Montana Refining Company; that at that time Hortenstein, Molt, Catlatt, Brown, Shawhan and Winne transferred to H. V. Book 30,000 shares of the common stock of the Montana Refining Company, and thereupon H. V. Book procured himself, F. P. Book, Holton, Wood and Wadsworth to be elected directors of the company, O'Brien to be selected its manager, and Seifert to be made custodian of its records; that H. V. Book thereupon caused promissory notes of the Montana Refining Company in amounts aggregating $10,500 to be executed and delivered to defendant Molt, and procured Molt to indorse and deliver the notes to the Century Oil Company, and thereafter caused the Century Oil Company to sue on the notes and attach the property of the Montana Refining Com-

pany, and caused the books of the Montana Refining Company to be manipulated and falsified so as to show an indebtedness of approximately $19,000 existing in favor of the Lewistown Oil & Refining Company and against the Montana Refining Company, when in fact such indebtedness did not exist; that H. V. Book, by dominating the directors of the Montana Refining Company, caused the stock of crude petroleum which that company had in store to be sold, and prevented the company from procuring any further supply, prevented the Montana Refining Company supplying any of its customers, except the city of Billings, with refined products, diverted all of the business to the Lewistown Oil & Refining Company, compelled the Montana Refining Company to purchase the products of the Lewistown Oil & Refining Company at prices which prevented any profit, caused one of the stills of the Montana Refining Company's plant and one of its buildings to be destroyed and much of its property to be removed to the plant of the Lewistown Oil & Refining Company.

It is alleged further that, if the business of the Montana Refining Company had been managed honestly, the holders of preferred stock would have received the dividends mentioned in their stock certificates and the preferred stock would have been redeemed on or about January 1, 1923, but by reason of the wrongful acts set forth no dividends have been paid and no part of the preferred stock has been redeemed; that if the present management continues, the Montana Refining Company will become insolvent and, by reason of the control of the officers by H. V. Book, plaintiffs are without any means for redress through the corporation itself; and that H. V. Book "and his associates, officers of said company, reside without the state of Montana."

The complaint concludes with a prayer that a receiver be appointed to take over the books, business and property of the Montana Refining Company; that the directors and O'Brien and Seifert be enjoined from removing the corporate books

71 Mont.—8

and records from the jurisdiction of the court; that all con-
tracts held by the company as consideration for the common
stock be returned, and that all outstanding certificates of
common stock be canceled; that the pretended claims of in-
debtedness in favor of the Century Oil Company and the
Lewistown Oil & Refining Company be decreed to be without
consideration and in fact claims of H. V. Book; and that the
owners of preferred stock be decreed to be entitled to vote
such stock.

Apparently the Montana Refining Company, the Lewistown
Oil & Refining Company and Charles J. Seifert were the only
defendants served with summons. The Montana Refining
Company interposed a demurrer which challenged the juris-
diction of the court and the sufficiency of the complaint, and
the Lewistown Oil & Refining Company and Seifert jointly
demurred on the same grounds. The demurrers were sus-
tained and, upon plaintiffs declining to plead further, the
application for the appointment of a receiver was denied and
a judgment dismissing the complaint was entered; hence these
appeals.

1. The appeal from the judgment is submitted upon the
theory that plaintiffs are not entitled to maintain this action
unless the district court was authorized to grant the specific
primary relief demanded—that is to say, (a) to set aside the
contracts held in exchange for common stock and cancel the
outstanding certificates of common stock; or (b) to confer
upon the holders of preferred stock the right to vote such
stock; or (c) to determine that the indebtedness of the Mon-
tana Refining Company to the Century Oil Company and
the Lewistown Oil & Refining Company is without considera-
tion.

The principle which underlies the general rule of law in-
[1, 2] voked by the appearing defendants is recognized by prac-
tically all of the authorities, though the rule itself is not always
stated in the same precise terms. In 8 Fletcher's Cyclopedia
Corporations, section 5786, it is said: "It is a well-settled

principle that the courts of a state or country have no visitorial power over foreign corporations. Such power belongs exclusively to the state or country by which the corporation was created. The courts of a state or country, therefore, have no jurisdiction to interfere, by injunction or otherwise, in the management of the internal affairs of a foreign corporation, even at the suit of a resident stockholder, and even though the corporation may be doing business in the state or country and may have expressly or impliedly agreed to submit to the jurisdiction of the court in suits against it. The rule applies even though the corporation has a large amount of visible tangible property within the state. As a general rule, the courts of one state will not exercise the power of deciding controversies relating merely to the internal management of the affairs of a corporation organized under the laws of another state or of determining rights dependent upon such management. Questions relating to the management of the internal affairs of a foreign corporation are to be settled by the tribunals of the state which created the corporation." (See, also, 5 Thompson on Corporations, 2d ed., secs. 6743, 6744.)

In *Babcock* v. *Farwell*, 245 Ill. 14, 137 Am. St. Rep. 284, 19 Ann. Cas. 74, 91 N. E. 683, the court said: "The general rule has been declared by the decisions of many courts and has been stated by text-writers to be that the courts of one state will not exercise the power of deciding controversies relating merely to the internal management of the affairs of a corporation organized under the laws of another state or of determining rights dependent upon such management. * * * Except in cases involving the exercise of visitorial powers, the question is not strictly one of jurisdiction but rather of discretion in the exercise of jurisdiction."

Counsel for plaintiffs does not question the rule, but insists that the matters here involved do not relate to the internal affairs of the Montana Refining Company. Among the authorities which have announced and enforced the rule, con-

flicting conclusions have been reached in its application, attributable primarily to the extreme difficulty experienced in attempting to draw the line of demarcation between matters which pertain to the internal affairs of a corporation and those which do not.

In *North State C. & G. Min. Co.* v. *Field*, 64 Md. 151, 20 Atl. 1039, the proper test in such cases was said to be: "That where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation our courts will not take jurisdiction. Where, however, the act of the foreign corporation complained of affects the complainant's individual rights only, then our courts will take jurisdiction, whenever the cause of action arises here."

It will be observed that in the instant case we have the Montana Refining Company, a corporation organized under the laws of Delaware, its property located in Montana, its officers and directors nonresidents of this state, the majority of its voting stock apparently held by nonresidents and, so far as disclosed, by persons not parties to this action, and this action prosecuted by resident stockholders of this state who ask the courts of this state, first, to set aside the contract entered into by the company and Hortenstein, to return the properties received by Hortenstein, and to cancel the outstanding certificates of common stock because they were issued in violation of the provisions of section 3, Article IX, of the Constitution of Delaware, were exchanged for properties which are alleged to be worthless, and because the transaction constituted a fraud upon the holders of preferred stock. Substantially the same relief was sought upon the same grounds and under somewhat similar circumstances in *Madden* v. *Penn Electric Light Co.*, 181 Pa. 617, 38 L. R. A. 638, 37

Atl. 817, but relief was denied, and the court said: "Here the plaintiffs, stockholders, accuse the corporate management of disregard of the rights of the whole body of stockholders for whom the corporation is trustee, in making unwise and reckless contracts, which depreciate and render valueless their stock. The wrong complained of is not from the violation of a contract with them, but want of fidelity to duty in their fiduciary relation springing from the nature of the organization. In substance, the averment is that at the office of the company, in the state of New Jersey, the management, in violation of their official duty, entered into a contract to be performed in Pennsylvania, whereby the stockholders suffer. This, plainly, strikes at the internal management of the company; the existence of the wrong must be ascertained, and the remedy applied, according to the laws of the domicile." The decision is cited with approval in 5 Thompson on Corporations, second edition, section 6742, where it is stated as a general rule: "A local court will not at the suit of a resident stockholder of a foreign corporation set aside as unwise, disastrous and useless, contracts which depreciated and tended to destroy the value of the stock although the tangible property of the corporation was located in the state of the forum."

In 8 Fletcher's Cyclopedia Corporations, section 5797, it is said: "A court of equity, acting on the principle of non-interference with the internal affairs of a corporation created and existing by or under the laws of another state or country will not at the suit of a stockholder, or otherwise, interfere to enjoin a foreign corporation from issuing stock in alleged · violation of the charter or the laws of the state by which the corporation was created."

We cannot grant the plaintiff's contention that the Montana [3] Refining Company is domiciled in this state and should be regarded substantially as a domestic corporation. Nearly a century ago the supreme court of the United States announced the rule, adhered to ever since, that a corporation "must dwell in the place of its creation, and cannot migrate

to another sovereignty." (*Bank of Augusta* v. *Earle,* 13 Pet. (U. S.) 519, 588, 10 L. Ed. 274 [see, also, Rose's U. S. Notes].) The doctrine of that case was reaffirmed in *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325, 64 L. Ed. 931, 40 Sup. Ct. Rep. 558, decided in 1920, wherein it was said: "The company was confessedly domiciled in North Dakota; for it was incorporated under the laws of that state."

In 1 Fletcher's Cyclopedia Corporations, section 387, the rule is stated as follows: "Not only is the fact of the citizenship, habitancy, and residence of a corporation settled beyond the point of refutation, but the courts with few dissenting voices assent to the proposition only occasionally attempted to be qualified, that such citizenship, domicile, residence, or habitance, as the case may be, can be only of or in the state or country by which the corporation was created."

That the act of the directors in transferring the common [4] stock to Hortenstein in exchange for the properties mentioned affects each of these plaintiffs in his capacity as a stockholder only and does not affect his individual rights is perfectly apparent. (*Taylor* v. *Mutual Reserve Fund Life Assn.,* 97 Va. 60, 45 L. R. A. 621, 33 S. E. 385.)

We conclude that to grant the first prayer of the complaint would involve an interference with the management of the internal affairs of the Montana Refining Company; indeed, to cancel the certificates of common stock—the only stock with voting power—would, in effect, suspend the corporate fran- [5] chise. But furthermore it is elementary that a court will not grant relief which it is unable to enforce, and it is difficult to conceive how the district court of Yellowstone county could compel the surrender of the certificates of stock held by nonresidents of this state or adjudicate that such certificates are invalid in the hands of persons who are not before the court and not parties to this action.

The second prayer of the complaint is that these plaintiffs, [6] as holders of preferred stock, be decreed to be entitled to vote their stock, notwithstanding the articles of incorpora-

tion of the company, its by-laws, and the certificates of stock declare that the owners of preferred stock shall not have the right to vote such stock. Counsel for plaintiffs directs attention to section 4, Article XV, of the Constitution of this state, which provides: ''The legislative assembly shall provide by law that in all elections for directors or trustees of incorporated companies, every stockholder shall have the right to vote in person or by proxy the number of shares of stock owned by him,'' *etc.* The most cursory reading of the section discloses that it refers exclusively to corporations organized under the laws of this state.

As the term itself implies, ''preferred stock'' is stock which [7–9] gives to the holder a preference over the holder of common stock with respect to the payment of dividends. (6 Fletcher's Cyclopedia Corporations, sec. 3621.) The relation between a corporation and the holder of its preferred stock is one of contract, and the terms of the contract are to be ascertained from the certificate, read in connection with the provisions of the general laws of the state, the articles of incorporation, and the by-laws. (*Id.*, sec. 3632.) Except for the preference, the holder of preferred stock has the same rights and is subject to the same liabilities as the holder of common stock; that is to say, in the absence of provisions in the general laws of the state, the charter or by-laws to the contrary, the holder of preferred stock in virtue of his character as a stockholder, has the same right to vote his stock as the holder of common stock has to vote his stock; but, in the absence of constitutional or statutory provisions to the contrary, it is within the power of the corporation to provide that its preferred stock shall not entitle the holder to vote it; and whenever the articles of incorporaton or by-laws contain such a provision it will be binding upon all persons who accept such stock, since the provision does not violate any rule of common law nor of public policy, and does not affect the public, but is merely a matter of contract. (*Id.*, sec. 3638.)

It is alleged in the complaint: "That under the terms of said certificates and the articles of incorporation and by-laws of said company, the owners of preferred stock do not have a vote or voice in the management of said company." These provisions of the articles of incorporation and by-laws enter into and form a part of the contract between the company and every purchaser of its preferred stock; but notwithstanding the fact, by this second prayer of the complaint the plaintiffs are asking a court of equity to change the articles of incorporation of a foreign corporation, amend its by-laws, and make for them a new contract different materially from the one which they made for themselves. That the court is without authority to do any of these things is too obvious to require the citation of authorities.

By the third prayer of the complaint the court is asked to [10] decree that the indebtedness of the Montana Refining Company to the Century Oil Company and to the Lewistown Oil & Refining Company is without consideration. So far as it applied to the indebtedness to the Century Oil Company, this prayer is most remarkable. It is not alleged in the complaint that the indebtedness to Molt did not exist or that the notes for $10,500 did not represent an actual indebtedness to him, or that they were executed or delivered without consideration. Whether the notes were negotiable or non-negotiable is not made to appear. Every negotiable instrument is presumed *prima facie* to have been issued for a valuable consideration (sec. 8431, Rev. Codes), and a written instrument is presumptive evidence of a consideration (sec. 7512). "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." (Sec. 7513.)

It is alleged "that said pretended indebtedness to the Century Oil Company is fictitious and sham," but no facts are stated from which either of these conclusions of the pleaders is deducible, and the allegation, if otherwise unobjectionable, is of no force or effect, in the absence of a showing that the

Montana Refining Company could have interposed a defense as against Molt, the original payee.

It is alleged in the complaint: "That the Century Oil Company is a corporation organized under the laws of the state of Delaware, with its principal places of business at Wilmington, Delaware, and Detroit, Michigan." It is not alleged that it has ever been authorized to do or has ever done business in this state or that it has any agent in this state upon whom service of process may be made. But every other consideration aside, the complaint does not state facts sufficient to authorize the court to make any order or render any judgment affecting this indebtedness.

The alleged indebtedness to the Lewistown Oil & Refining Company presents a different question.

We agree with counsel for plaintiffs that this is the ordinary [11] minority stockholders' suit, brought in behalf of the corporation, Montana Refining Company, and not one to subserve the private, personal interests of plaintiffs. (*Brandt* v. *McIntosh*, 47 Mont. 70, 130 Pac. 413.) It is alleged that H. V. Book owns a majority of the stock of the Lewistown Oil & Refining Company, and that he dominates Molt, Frank P. Book, Holton, Wood, Wadsworth, O'Brien, Seifert, Brown, Hortenstein, Shawhan, Winne and Catlatt and dominates "all officers of the Montana Refining Company." It is alleged also that in June, 1922, H. V. Book owned a majority of the voting stock of the Montana Refining Company, and at that time he, F. P. Book, Holton, Wood and Wadsworth constituted the board of directors of that company, but this action was not commenced until August 27, 1923, and whether at that time H. V. Book, or he with the other directors named, owned a majority of the voting stock, or whether any of the persons just mentioned was then a director of the Montana Refining Company, does not appear. Neither does it appear that these plaintiffs applied for redress to the directors in office immediately before this action was commenced.

In *Deschamps* v. *Loiselle,* 50 Mont. 565, 148 Pac. 335, this court said: "It is no longer open to question in this jurisdiction that stockholders have no standing in court to sue on behalf of the corporation until they have applied to the officers and directors for relief and have been answered by a refusal, or the course of conduct being pursued by the latter is such as would render an application for relief fruitless."

It appears from the allegations of the complaint that plain-tiffs own some of the common stock of the Montana Refining Company, and that if they, in connection with other holders of common stock friendly to them, own or control a majority of that stock, and if it be a fact that the directors were acting contrary to the best interests of the corporation, manifestly their duty was to oust the recalcitrant directors and elect members who will promote and protect the company's interests. In any event, in the absence of a showing that a majority of the voting stock was held by persons who refused their aid to obtain redress for the alleged wrong of which complaint is now made, and in the absence of any showing that the case will not admit of delay necessary to obtain action by the stockholders, it was incumbent upon plaintiffs that they appeal to the stockholders and that they be denied relief before they could institute this action; in other words, a court will not do for minority stockholders what they may do for themselves.

In *Hawes* v. *Oakland,* 104 U. S. 450, 26 L. Ed. 827 [see, also, Rose's U. S. Notes], the court indicated the circumstances under which a suit by a minority stockholder may be maintained, and among other things said: "But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort, with the man-

aging body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity." (See, also, *Kessler* v. *Ensley Land Co.* (C. C.), 123 Fed. 546; 14 C. J. 933.)

In *Continental Securities Co.* v. *Belmont*, 206 N. Y. 7, Ann. Cas. 1914A, 777, 51 L. R. A (n. s.) 112, 99 N. E. 138, the court said: "It is the governing body or bodies of a corporation with power to enforce a remedy to whom complaining stockholders must go with their demand for relief. The governing body of corporations in this state, as we have seen, is the board of directors. A complaining stockholder must go to such board for relief before he can bring an action, unless it clearly appears by the complaint that such application is useless. If the subject matter of the stockholder's complaint is for any reason within the immediate control, direction, or power of confirmation of the body of stockholders, it should be brought to the attention of such stockholders for action, before an action is commenced by a stockholder, unless it clearly appears by the complaint that such application is useless." The same rule obtains in the English courts. (*Foss* v. *Harbottle*, 2 Hare, 461; *Gray* v. *Lewis*, L. R. 8 Ch. App. 1035; *MacDougall* v. *Gardiner*, 1 Ch. Div. 13.)

Our conclusion upon this branch of the case is that plaintiffs failed to show that they exhausted all available means of redress within the corporation itself; hence the court did not err in refusing relief. (14 C. J. 943, 944.)

So far as the application for an injunction to prevent the [12] directors O'Brien and Seifert from removing the cor-

porate records from the jurisdiction of the court is concerned, it is sufficient to say that it is not alleged that the persons named, or any of them, are removing or threaten to remove, or will remove, such records if the injunction is not granted, and for this reason the complaint is insufficient. (*Haupt* v. *Independent Telegraph Messenger Co:,* 25 Mont. 122, 63 Pac. 1033; 32 C. J. 327.)

2. The appeal from the order refusing to appoint a receiver [13] likewise presents the question of the sufficiency of the complaint. There is not any such thing known to the law of this state as an action for the appointment of a receiver. Receivership is a provisional remedy of ancillary character, allowable only in an action pending for some other purpose, and the action pending must be one in which issues are to be determined even though the application for the appointment of a receiver be denied. (*Hartnett* v. *St. Louis, M. & M. Co.,* 51 Mont. 395, 153 Pac. 437.)

Since we have already determined that the complaint does not state a cause of action for primary relief, consideration of other questions presented upon this branch of the case need not be noticed.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.

MR. JUSTICE COOPER, being absent, did not hear the argument and takes no part in the foregoing decision.