KAHN, *Appellant*, v. THE BANK OF ST. JOSEPH.

**Corporation**: BY-LAWS RESTRICTING TRANSFER OF STOCK. A by-law of a bank declared: " No transfer of stock shall be allowed or valid, so long as the holder is *in arrears* to the bank or *in any form indebted* to it." The statute under which the bank was organized provided: " No shares shall be transferred until all previous calls thereon shall have been fully paid in." Wag. Stat., ₰ 16, p. 292. Another statute declared that when any shares of stock in any bank shall be sold, the officer shall execute a bill of sale to the purchaser, and shall also leave with the cashier of the bank a copy of the execution and his return thereon, " and the purchaser shall thereupon be entitled to all dividends and stock and to the same privileges as a member of such corporation, as such debtor was entitled to." Ib., ₰ 53, p. 611. *Held*, that the by-law, construed as it must be, so as not to conflict with the spirit of these statutes, could not be held to forbid a transfer of any stock on which all previous calls have been paid. The word " arrears" in the first clause refers to unpaid calls, and the phrase " in any form indebted" in the other clause refers to indebtedness outside of the stock subscription. The by-law, therefore, did not justify the bank in refusing assent to a transfer on the ground that only thirty per cent. of the stock had been paid in, when no more had been called for by the directors.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB,
Judge.

REVERSED.

*R. H. Musser* for appellant.

The only restriction imposed by statute upon the power of the stockholder to make transfers, is that all previous calls thereon shall have been paid in full. Wag. Stat., § 16, p. 292. The only power given to private corporations to make by-laws is: " To make by-laws not inconsistent with existing law, for the management of its property, the regulation of its affairs and for the transfer of its stock." Wag. Stat., § 1, p. 289. The by-laws pleaded by defendant are inconsistent with section 16, *supra*, and are, therefore, void. Angel & Ames on Corp., § 343; *K. & P. R. R. Co. v. Kendall*, 31 Me. 470 ; *Norris v. Staps*, Hob-

art 210 b.  The power to regulate the transfer of stock does not include the power to restrain transfers or prescribe to whom they may be made, but merely the formalities to be observed in making them.  *Chouteau Spring Co. v. Harris*, 20 Mo. 382, 389; *Johnson v. Laflin*, 6 Cent. Law Jour 124, (per Dillon J.)

"There is no lien at common law upon stock for debts in favor of the corporation issuing the stock.  When such a lien exists, it is by statutory authority either expressed in the act of incorporation or by laws made by authority of the act."  Angel & Ames on Corp., p. 335; *Steamship Dock Co: v. Heron*, 52 Pa. St. 280; *Mass. Iron Co. v. Hooper*, 7 Cush. 183.  Whenever a by-law seeks to alter a well settled and fundamental principle of common law, or to establish a rule interfering with the rights or endangering the security of individuals or the public, a statute or other special authority emanating from the creating power must be shown to legalize it either expressly or by implication.  *Taylor v. Griswold*, 14 N. J. Law 222, 244; *Phillips v. Wickham*, 1 Paige 590; Thompson on Liability of Stockholders, § 210; *Moore v. Bank of Commerce*, 52 Mo. 377.  The uncalled and unpaid stock subscription cannot be considered an indebtedness, within the meaning of the said by-laws.  There is no liability on the stock subscription until something has been done by the proper authorities.  No cause of action under the statute accrues until a call is made, and only that portion of the subscription called is a debt, and the company has only a cause of action for that portion of the original subscription which has been called.  *Hannah v. The Moberly Bank*, 67 Mo. 678; *Bouton v. Dry Dock Co.*, 4 E. D. Smith (N. Y. Com. Pl.) 420; *Banet v. Alton, &c., R. R. Co.*, 13 Ill. 504.

*Franklin Porter* and *Silas Woodson* for respondent.

1.  The by-laws are authorized by statute, and are valid.  Wag. Stat., § 1, p. 289; § 16, p. 292; *St. Louis*

*Perpetual Ins Co. v. Goodfellow,* 9 Mo. 150; *Mechanics' Bank v Merchants' Bank,* 45 Mo. 515; *Spurlock v. Pacific R. R. Co.,* 61 Mo. 323.

2. Moreover, the same regulation as to transferring the stock, and the same reservation of a lien is set out in express terms upon the face of the stock certificates. Defendant thereby further secured to itself the said right to regulate the transfer and the said lien, by the express contract which said certificates evidence between defendant and the original stockholders. The certificates further showed on their faces that only $30 had been paid on each of the 398 shares, and that the remainder was payable at such time as defendant's board of directors might order. No share of bank stock can, by statute, be less than $100. Wag. Stat., § 2, p. 329. Thus plaintiff had actual notice of said contract.

3 At the time of the alleged sale to plaintiff the assignors of said stock were both "in arrears to" and "indebted to" defendant for the unpaid balance of said subscription, within the true intent and meaning of said by-laws and stock certificates. The phraseology of the by-laws seems to have been specially designed to embrace that form of indebtedness, and the word "liability" used in said by-laws, is as comprehensive a term as the language affords. *Pittsburg & C. R. R. Co. v. Clark,* 29 Pa. St. 150; *McCready r. Rumsey,* 6 Duer 574; *Rogers v. Huntingdon Bank,* 12 Serg. & Rawle 77; *Graff v. Pittsburg, &c., R. R. Co.,* 31 Pa. St. 489; Angel & Ames on Corp., §§ 517, 519; Wag. Stat., § 13, p. 291.

4. The office and effect of registering a transfer on the company's books, is by way of novation, to release the assignor from liability to pay his subscription, and to substitute the assignee in his stead. 1 Redfield on Railw., (3 Ed.) p. 181, (4 and 7,) p. 183, § 54; Angel & Ames on Corp., § 534; *McClaren v. Franciscus,* 43 Mo. 452; *Miller r. Manion,* 50 Mo. 56; *Webster v. Upton* 91 U. S. 65. Defendant knew the original subscribers for the stock to be

solvent. Plaintiff was not a resident of Missouri; was wholly unknown to defendant and for aught defendant knew a mere man of straw. The demand of a transfer upon the books required defendant to discharge its responsible stock-holders from an obligation to pay $27,860, and thereafter to look only to this unknown resident of Ohio therefor. To require defendant to respond in damages in this suit, would be tantamount to saying that its consent was not needed for the substitution of a new and unknown debtor instead of him with whom it had contracted, thereby discharging the latter, and would take from corporations all power to protect themselves.

NAPTON, J.—This case depends altogether upon the construction of certain by-laws of the bank claimed to be in accordance with general legislation. The plaintiff claimed that S. Adler was the owner of 350 shares of the capital stock of defendant; that said Adler, for valuable consideration, sold said stock to plaintiff; and that defendant refused to permit a transfer of said stock on the books of the bank. The defendant admitted the transfer, but denied that it was bound to accept the plaintiff as a stockholder, because Adler had only paid thirty per cent. on his stock, and the bank had a lien on the stock for the seventy per cent. not paid. The plaintiff, who was a citizen of Ohio, bought the stock in question from the stockholder who had paid up all calls made, but the president refused to permit his purchase to be entered on the books of the bank. The question is, whether the president and board had any such power, and whether the assignment would not be valid, not merely against the assignor, but against the company, and compel them to respond in damages for a refusal to recognize it.

The 16th section, of article 1, chapter 37, Wagner's Statutes, page 292, reads as follows: " The stock of every company formed under this act shall be deemed personal estate, and shall be transferable in the manner prescribed

by the by-laws of the company; but no shares shall be transferred until all previous calls thereon shall have been fully paid in." The 17th section, same article, provides: "All bodies corporate, by any suit at law, in any court in this State, may sue for, recover and receive from their respective members all arrears or other debts, dues and other demands which now are or hereafter may be owing to them in like mode, manner and form, as they might sue for, recover and receive the same from any person who might not be one of their body, any law, usage or custom to the contrary thereof notwithstanding." The 2nd section of the 6th article of the same chapter, page 329, declares: "The capital stock of any such association shall not be less than $50,000, nor more than $1,000,000, to be divided into shares of not less than $100, of which ten per cent. upon each share shall be paid at the time subscribed; the remainder of the stock shall be paid upon such calls and upon such terms as the directors may from time to time prescribe." The 4th section of same article, page 330, provides as follows: "Before any such corporation shall commence its business, a majority of the shares thereof shall have been subscribed for, and the entrance fees thereon paid in, and the president and secretary thereof, under their hands and seals, shall have made a certificate, which shall specify: First, the corporate name of such corporation; secondly, the name of the city or town in which such corporation is to be located; thirdly, the amount of its capital stock, and the number of shares into which the same shall be divided; fourthly, the names and places of residence of the stockholders, and the number of shares held by each; fifthly, the time when such corporation was organized—which certificate shall be acknowledged before a justice of the peace, and recorded in the registry of deeds for the county in which such corporation is to be located; and a copy thereof, and the by-laws of the said association shall be filed in the office of the Secretary of State; and copies of such certificate, duly attested by the register of

deeds or Secretary of State, shall be admitted as sufficient evidence in all the courts of law, and on all occasions whatsoever."

The 3rd section of the by-laws of defendant, is as follows: "The cashier shall also cause a transfer book to be kept, in which every transfer shall be made by the stockholder, his attorney in fact, or legal representatives; and no transfer of stock shall be valid until it is so entered, attested by the signature of the president or cashier. And no transfer of stock shall be allowed or valid so long as the holder is in arrears to this bank, or in any form indebted to it." The 4th section of the by-laws declares: "The bank reserves to itself a lien upon all stock issued to or held by any stockholder for the security of any debt owing in any form to said bank by such stockholder, whether the same is due or not due, and whether such liability was created before or after the issuance of such stock certificate."

The stock certificate of Simon Adler and the assignment to plaintiff, were as follows :

CAPITAL STOCK $500,000.

No. 68.    STATE OF MISSOURI,    SHARES, 350.

*The Bank of St. Joseph.*

This is to certify, that S. Adler is entitled to three hundred and fifty shares of the capital stock of the Bank of St. Joseph, upon each of which shares $30 has been paid, the remainder payable at such times as the board of directors of said bank may order. This stock is transfer able only on the books of said bank in person, or by attorney, on return of this certificate; provided, however, that no such transfer shall be made while the said S. Adler is in any manner indebted to said bank. For any and all such indebtedness direct lien is hereby reserved and given.

ST. JOSEPH, Mo., February 10, 1874.

(Signed,) C. F. BURNES, President.
(Signed,) R. P. RICHARDSON, Cashier.

Assignment and power of attorney, (on back of said certificate):

For value received, I do hereby sell, assign and transfer to Aaron Kahn, three hundred and fifty shares of the capital stock of the Bank of St. Joseph, standing in my name on the books of said bank and represented by the within certificate, and do hereby irrevocably constitute and appoint Abraham Adler, attorney in fact, to transfer the·said stock on the books of said bank in such form and manner as may be necessary or required by the regulations of said bank in that behalf in the premises.

Witness my hand, this 12th day of April, A. D. 1876.

(Signed,) S. ADLER.

The question in this case evidently depends on the construction of the 3rd section of the 8th article of the by-laws of the company. That section provides that "no transfer of stock shall be allowed or valid so long as the holder is in arrears to the bank or in any form indebted to it," and if the words "in arrears to the bank," or the words "in any form indebted to it," meant to embrace an indebtedness arising from an original subscription, upon which the stockholder had paid all that had been called for, it is clear that the bank officers were authorized, or rather required to prohibit such transfer on the books of the company. The term indebtedness is a very general and comprehensive one, and undoubtedly may, under proper circumstances, be held to embrace unpaid subscriptions of stock, as it has been frequently held to include debts not · due, as well as those that are due. There are, however, some difficulties which attend so liberal a construction of this term in the present case, which must readily occur when the language of this by-law is more particularly scrutinized. It will be observed that this provision does not leave any discretion with the officers of the bank to admit or reject the proposed transfer; the prohibition is unconditional; "no transfer of stock shall be allowed or

valid so long as the holder is in arrears to the bank or in any form indebted to it." If, therefore, the holder of stock upon which only thirty or fifty per cent. has been called for is still in arrears on account of the seventy or fifty per cent. not called for, or the unpaid stock is to be regarded as a form of indebtedness within the meaning of this by-law, it inevitably follows that none of the stock of this bank, at the date of this trial, was transferable. And it could hardly be called a mere conjecture, if we assume that in all probability there were very few banks in the interior of the State, where the business of the banks did not require or justify the payment of the entire stock, that the entire stock ever is called for.

Besides the inconvenience to which such a construction leads, this by-law thus construed would plainly con-flict, not merely with provisions in the statute which constitutes its charter, but with the general scope of our statutory and common law as expounded by our courts. Take, for instance, the act concerning executions: " When any rights or shares of stock in any bank, company or corporation, shall be sold, the officer making such sale shall execute an instrument in writing, reciting the sale and the payment of the consideration, and conveying to the purchaser such rights and shares, and shall also leave with the cashier, secretary or chief clerk, or if there be none, with any other officer of such bank, corporation or company, a copy of the execution and his return thereon; and the purchaser shall, thereupon, be entitled to all dividends and stock, and to the same privileges as a member of such company or corporation as such debtor was entitled to." Here the statute substitutes for a transfer on the books of the company a reception by its officer of a copy of the execution, and the purchaser at the execution sale is, thereupon' entitled to all the privileges of the debtor, as a subscriber. If there was unpaid and uncalled for stock in such a case, the purchaser, nevertheless, gets all the rights held by the debtor stockholder, whether the company chooses to rec-

ognize him or not. Again, the statute under which this company was organized declares that " the stock of every company formed under this act shall be deemed personal estate, and shall be transferable in the manner prescribed by the by-laws of the company; but no shares shall be transferred until all previous calls thereon shall have been fully paid in." It seems not an unreasonable inference from this provision that where all previous calls had been paid, no objection to a transfer could be based on the fact of there being unpaid stock not called for.

Objections might originate from other causes, distinct from the original subscription, and such objections could be provided for in the by-laws. The validity of such by-laws was recognized by this court in the case of *St. Louis Perpetual Ins. Co. v. Goodfellow*, 9 Mo. 150. They were held to be reasonable and not inconsistent with our general laws concerning personal property, whether such debts were due or not. And such, we think, is the proper construction of the by-law in question. It prohibits the transfer of stock when the stockholder is " in arrears " in answering calls on his unpaid stock, and also when he is otherwise indebted to the bank, outside of his original subscription. The construction contended for by the defendant would make the by-law an unreasonable one, and in conflict with, if not the letter, at least with the spirit of many of our statutory provisions relative to this subject.

Our attention has, however, been called to a decision of the Supreme Court of Pennsylvania which is supposed to conflict with this conclusion. It is the case of *Pittsburg & Conelsville R. R. Co. v. Clark* and *Thaw*, reported in 5 Casey 150. It was held that the liability of a stockholder to pay the amount of stock subscribed was an indebtedness within the meaning of the act, although the installments had not been called for. That opinion was based upon a construction of the provision in the charter of the company, which directed certificates " to be delivered to the persons entitled to receive them, which evidences of

stock shall be transferable at the pleasure of the holder in a suitable book to be kept by the company for that purpose, in the presence of the president or treasurer, subject, however, to all payments due or to become due thereon, and the assignee, or party to whom the same shall have been so transferred, shall, thereupon, be a member of said corporation and have and enjoy all the immunities, privileges and franchises, and be subject to all the liabilities, conditions and penalties incident thereto, in the same manner as the original subscriber would have been; provided, that no certificate shall be transferred so long as the holder thereof is indebted to said company, unless the board of directors shall consent thereto ; and provided, that no such transfer of stock shall have the effect of discharging any liabilities or penalties theretofore incurred by the owner thereof."

We have conceded at the outset of this opinion that the word "indebted" is sufficiently comprehensive to embrace unpaid stock as well as any other form of indebtedness, provided the context and general intent of the law does not require a more narrow interpretation. It will be perceived that the law here construed by the Supreme Court of Pennsylvania differs from the by-law we have been considering in several essential points. It provides that the transfer is subject to all payments due or to become due thereon; that it is in the discretion of the board to consent to any transfer or refuse it, and that in any event whether the directors consent or not, none of the liabilities of the original owner are discharged. Such is the construction given to this clause by the Supreme Court of Pennsylvania.

That such a provision might be made in the statute, or charter of the company, and might be a reasonable and useful one in a by-law, we are not disposed to deny, but the by-law in question is certainly not such a provision. No discretion is allowed the board of directors in this by-law; nothing is said about stock to become due, nor is the

responsibility of the original subscriber expressly provided for; on the contrary, this by-law expressly prohibits any transfer of stock so long as the holder is in arrears.

How and when is he in arrears? When he has paid up all calls? Can one be said to be in arrears when he has paid up all calls upon him? Undoubtedly the word indebted, in the subsequent clause of this section, is large enough to include unpaid stock never called for; but such a construction of the last clause renders the first clause unmeaning and superfluous. I suppose the words "in arrears," when applied to stock, meant just what the statute did, when it declared that no shares of stock should be transferred until all calls thereon had been fully paid in, and the remaining clause of the by-law was inserted to provide against transfers whilst there was an indebtedness outside of the subscription. This case was decided in the court below upon the sole ground of the validity of the by-law we have been considering, construing it as prohibiting all transfers by a stockholder who had not paid up all his stock, whether called for or not. What other grounds of objection there may have been, or yet may be, the record does not disclose, and we cannot anticipate imaginary cases. The judgment must be reversed and the cause remanded. The other judges concur.