NATHAN F. MURPHY, Plaintiff-Appellant, v. RICHARDSON DRY GOODS COMPANY, Defendant-Appellant.—31 S. W. (2d) 72.

Court en Banc, September 3, 1930.

(1)

*W. M. Morton* for plaintiff-appellant.

*Culver, Phillip & Voorhees* for defendant-appellant.

ATWOOD, J.—This case reaches us on cross-appeals advanced on the docket and comes to the writer by reassignment. The issues and facts thus presented will be briefly stated.

Plaintiff is the owner of five hundred shares of preferred stock of defendant, Richardson Dry Goods Company, which went into voluntary liquidation about January 1, 1928. This is a proceeding instituted by plaintiff, in his own behalf and in behalf of other stockholders similarly situated who might join therein, to enjoin defendant from distributing any part of its assets to the common stockholders until it has first paid the preferred stockholders a dividend

4

of six dollars per share for each of the years ending December 31, 1926, and December 31, 1927, amounting in all to $60,000, and to compel defendant, after the common stockholders have received the par value of their stock, to allow the preferred stockholders to share with them in the surplus.

The trial court enjoined defendant from distributing the assets of the common stockholders until it has first paid the two dividends of $6 a share to the preferred stockholders with interest from December 21, 1928, but denied the preferred stockholders the right to share with the common stockholders in the surplus.

From the undisputed facts disclosed by the record we find that defendant was incorporated December 29, 1910, with a capital stock of $800,000, divided into 8,000 shares of the par value of $100 each, 3,000 shares being common stock and the remaining 5,000 shares being preferred stock. Defendant was engaged in the wholesale dry goods business in the city of St. Joseph, Missouri. Since going into liquidation all of its merchandise has been sold and most of its book accounts have been collected. In March and April, 1928, the preferred stockholders were paid $500,000 representing the face value of their stock, and the common stockholders have as yet received nothing. All of the debts of the company have been paid and the balance on hand consists of about $170,000 in cash, about $5,000 in good book accounts, and real estate consisting of two business buildings in St. Joseph. These buildings are carried on the books of the company at $271,000, which represents the cost, less a small amount of depreciation. The carrying charges on the real property amount to $8,000 to $10,000 a year, exclusive of interest on the investment. Up to the time of the trial, efforts to sell or rent the buildings were unavailing, except as to a small space which was rented for $25 a month. All of the dividends have been paid regularly upon the preferred stock up to and including year 1925. No dividends were earned in the years 1926 and 1927, and during those two years the company lost in the neighborhood of $39,000 each year. No dividends have been paid on the common stock since 1920. No net profits were made after 1925. The articles of incorporation provide:

". . . said preferred stock shall be entitled to a dividend of six per cent per annum out of the net yearly income earned in any one current year before any dividend shall be made and paid on any of the common stock of said corporation, and which said preferred stock shall, upon distribution of the assets of said corporation, be first paid in full before any of said assets are applied to any of the common stock, but that said preferred stock shall have no voting power, . . ."

On December 30, 1910, the following by-law was adopted:

"The preferred stock of this corporation shall be entitled to a dividend from the profits of the capital at the rate of six per cent

per annum cumulative and no more, and upon the winding up of the company, the holders of said preferred stock shall be entitled, after the debts of said corporation are paid, to receive from the remaining assets of said corporation the par value of said preferred stock before the holders of the common stock shall receive any sums in liquidation upon their holdings of common stock; but said preferred stock shall have no voting power.''

On March 28, 1924, the articles were amended so as to strike out the words ''but that said preferred stock shall have no voting power.'' With the exception of this amendment the provisions of the articles of incorporation have remained unchanged.

Each appellant presents a single assignment of error. Defendant-appellant says:

''The court erred in decreeing that the preferred stockholders are entitled to a dividend of six per cent for the years 1926 and 1927.''

Plaintiff-appellant says:

''The court erred in its refusal to enjoin the defendant from distributing in liquidation the remainder of the assets of said company to its common stockholders after the payment to its preferred stockholders of the dividends upon the preferred stock for the years 1926 and 1927, such relief being necessary to protect the rights of the plaintiff as a preferred stockholder to share with all other stockholders in the assets of the defendant company after the payment of one hundred dollars per share to all stockholders, common and preferred.''

With reference to preferred stock dividends, defendant's articles of association provide that ''said preferred stock shall be entitled to a dividend of six per cent per annum out of the net yearly income earned in any one current year before any dividend shall be made and paid on any of the common stock of said corporation.'' In Fletcher's Cyclopedia of the Law of Private Corporations, Vol. VI, sec. 3754, p. 6249, it is said:

''Dividends on preferred stock may be either cumulative or non-cumulative. Sometimes the dividends are in express terms made to depend upon the profits of each particular year, so that the holders of the stock will not be entitled to any dividends in a particular year if there are not enough profits in that year to pay the same, or will be entitled only in so far as there are profits. In such a case, the dividends are not cumulative, and are not to be made up out of the profits, although sufficient, of subsequent years.''

The same doctrine is thus stated in Clark and Marshall on Private Corporations, Vol. 2, section 529d, p. 1643:

''Sometimes the dividends upon preferred stock are in express terms made to depend upon the profits of each particular year, so that the holders of the stock will not be entitled to any dividends

in a particular year if there are not enough profits in that year to pay the same, or will be entitled only in so far as there are profits. In such a case, the dividends are not cumulative, and are not to be made up out of the profits, although sufficient, of subsequent years.'' See also, 5 Thompson on Corporations (2 Ed.) sec. 5349; 14 C. J. 421, sec. 578; Dent v. London Tramways Co., 16 Ch. Div. 344; Staples v. Eastman Photographic Materials Co., 2 Ch. 303 (1896).

We do not think the limitation fixed upon payment of preferred stock dividends in the clause last above quoted from the articles of incorporation is removed by the context which immediately follows (italics ours), ''and *which said preferred stock shall,* upon distribution of the assets of said corporation, *be first paid in full* before any of said assets are applied to any of the common stock,'' etc. The preceding language restricted the preferred stock to such dividends as could be paid ''out of the net yearly income earned in any current year.'' There was no net income earned in either 1926 or 1927. Hence, the preferred stock was entitled to no dividends for those years, and the mere direction that upon distribution of the assets of said corporation the preferred stock should ''be first paid in full'' would not enlarge such payment so as to include dividends to which the stock was expressly not entitled. It follows that under the express terms of the articles of incorporation the dividends on preferred stock are non-cumulative, and, since the record shows that there were no earnings in 1926 and 1927, preferred stock owners are entitled to no dividends for that period. Plaintiff-appellant asserts the contrary and cites 1 Cook on Corporations (7 Ed.) p. 796; Hazel Atlas Glass Co. v. Van Dyk et al., 8 Fed. (2d) 716; and Langben v. Goodman, 275 S. W. 841. However, these authorities are not in point because they all proceed on the theory of stock issued without any mention of whether the dividends were cumulative and without any provision that the dividends should be paid out of the earnings of the current year, while the articles of incorporation in the instant case expressly provide that the preferred stock dividend shall be paid ''out of the net yearly income earned in any one current year.''

But, plaintiff-appellant says, dividends on preferred stock were made cumulative by the by-law adopted December 30, 1910, and hereinabove set forth. Defendant derives its power to issue preferred stock from Sections 3339 and 3358, Revised Statutes 1909, which were in effect when it was incorporated. These sections have been carried forward without amendments affecting the question here under consideration and now appear as Sections 10144 and 10163; Revised Statutes 1919. They prescribe the conditions upon which a Missouri corporation such as defendant can issue preferred stock. Section 3339, Revised Statutes 1909, contained and

Section 10144, Revised Statutes 1919, still contains, the following provision relative thereto (italics ours):

*"Provided, that if upon organizing a corporation under this article it is desired that any portion of the stock shall be preferred, the articles shall further set out* the amount of such preferred stock, the number of shares thereof, the names of the subscribers therefor, the number of shares of such stock subscribed by each subscriber therefor, and *the preferences, priorities, classification and character thereof as provided in Section 3358 of the Revised Statutes of Missouri, 1909."*

Section 3358, Revised Statutes 1909, thus referred to was carried forward without amendment as Section 10163, Revised Statutes 1919, and is as follows (italics ours):

"Whenever any corporation shall desire to call a meeting of its stockholders for the purpose of increasing the amount of its capital stock, and the directors thereof shall deem it advisable for the best interests of said company to submit, at the time and place of said meeting, to the stockholders, whether any part of said stock so proposed to be increased shall be preferred, and the amount, number of shares, the price per share, in case an increase shall be determined, and also the priorities, preferences and character thereof, and the different classes of preferred stock, if any, and in case additional notice to such effect shall have been given for the time as required by this article, for the purpose of increasing said capital stock, then, *if on canvassing the votes of the said stockholders, as required by this article, it shall appear that all the stock of said company shall have been cast for the increase of its stock, and that all the stockholders have voted that any part of the said increased stock shall be preferred, the said stockholders shall also, at said time and place, by like vote, determine the character, amount, the number of shares, and the price per share of said increase, and what rate of dividend, not exceeding eight per cent per annum, shall be paid on said preferred stock out of the net earnings, and whether such dividends shall be cumulative or not, and what priority, if any, any class of such preferred stock shall have over the common stock or other preferred stock out of the assets of the corporation in case of its dissolution or liquidation."*

Section 3356, Revised Statutes 1909, now Section 10161, Revised Statutes 1919, which prescribes method of increasing or diminishing amount of capital, or extending or changing the corporation's business, also provides that a verified and acknowledged statement of such proceedings shall be recorded in the office of the Recorder of Deeds of the county in which the corporation is located, and that a certified copy of such recorded instrument be filed in the office of the Secretary of State. Section 3359, Revised Statutes 1909, now Sec-

tion 10164, Revised Statutes 1919, provides that this statement required by Section 3356 "shall also set forth the amount and number of shares, the price per share of such preferred stock and the preferences, priorities, classification and character thereof, and also the rate of dividend to be paid thereon."

From the foregoing it appears that among the matters and things that must be determined and indicated in the articles of incorporation and in proceedings to increase the amount of capital, when any part of the original or increase of stock is to be preferred, is whether dividends on the preferred stock "shall be cumulative or not." Such statutory requirements must be complied with before preferred stock can be issued. In State ex rel. Ely & Walker Dry Goods Co. v. Swanger, Secretary of State, 195 Mo. 539, 93 S. W. 932, this court in banc awarded peremptory writ of mandamus where a statement of proceedings to increase capital and issue preferred stock omitted proposition adopted relative to priority of the preferred stock on dissolution or liquidation, and the Secretary of State thereafter refused to receive amended statement including the omitted matter and issue certificate thereon. Had these things been deemed proper matters to be covered by by-laws they would not have been required by statute to appear in the articles of incorporation and in the statement of proceedings relating to increase of capital. Speaking in this connection of the articles of incorporation, it is said in Stockard on Missouri Corporation Law, Section 95, p. 58:

"In setting out rate of dividends, priorities and preferences, the articles must be specific.

"Dividends will not be cumulative unless provided in the articles. No stock will participate to the exclusion of any other class of stock in the assets of a corporation on dissolution or liquidation unless specifically provided for in the articles of association. It means nothing to say only that a certain number of shares shall be preferred stock. All arrangement in reference to dividends, preferences, priorities and classifications is a matter of contract and must be stated in the articles of association."

The fact that the articles of incorporation and the statement of proceedings to increase capital stock are required to be placed of record in the office of the Recorder of Deeds of the county in which the corporation is located and also in the office of the Secretary of State indicates that in the legislative mind their contents were deemed to be of public concern as distinguished from the contents of by-laws which are not subject to inspection by the general public. The public policy declared by such statutes is interestingly discussed in Gaskill v. Gladys Bell Oil Co., 146 Atl. 337 (Court of Chancery of Delaware, May 22, 1929), and Lloyd v. Penna. Electric Vehicle Co., 75 N. J. Eq. 263. The by-law here in question not only

attempts to cover matters which our statutes provide shall be covered by the articles of incorporation, but in stating that the preferred stock shall be cumulative it is in direct conflict with the plain meaning of an express provision of the articles of incorporation, and to the extent of this conflict the language of the articles must prevail. [1 Cook on Corporations (7 Ed.) p. 22; 14 C. J. 362, sec. 460; Stockard on Missouri Corporation Law, p. 178, sec. 360; Kahn v. Bank of St. Joseph, 70 Mo. 262.] In this respect the by-law cannot be regarded as an interpretation of the articles of incorporation because their meaning is clear and they need no interpretation. It is a plain attempt to change completely one of the necessary provisions of the articles of incorporation by the adoption of a mere by-law. To that extent the by-law is invalid, and notwithstanding its adoption the dividends on the preferred stock must be held noncumulative as provided in the articles of incorporation. The only case cited by plaintiff-appellant that bears upon the question whether the by-law here in question is inconsistent with the articles of association is Boardman v. Lakeshore Ry. Co., 84 N. Y. 157, and that case is not in point because no inconsistency relative to the dividend appears between the resolution and the certificate of stock there discussed.

It follows from what we have already said that the stockholders cannot by consent waive or dispense with such statutory requirements. The corporation's power to issue preferred stock being limited by its charter to such as would bear non-cumulative dividends, it could not, even with the consent of all of its stockholders, issue preferred stock bearing cumulative dividends. We conclude that the trial court erred in holding that the preferred stockholders are entitled to a dividend of six per cent for the years 1926 and 1927.

Plaintiff-appellant's argument advanced in support of his assignment or error, hereinabove quoted, is to the effect that apart from and irrespective of preferences or special privileges expressly attached to preferred stock, on liquidation, he is inherently entitled to participate in the distribution of the assets on the same basis as common stock. Leading authorities cited in support of this theory are Continental Insurance Co. et al. v. United States of America et al., 42 Sup. Ct. 540; Sterling v. H. F. Watson Co., 88 Atl. 297; Ramey v. Ironton Lumber Co. et al., 166 Ky. 295; Re Espuela Land & Cattle Co. (1909), 2 Ch. 187; Re Fraser and Chalmer (1919), 2 Ch. 114, approving 2 Ch. 187 (1909); 14 C. J. 416, sec. 573; and 6 A. L. R. 829. In opposition thereto defendant-appellant cites Stone v. Envelope Co., 111 Atl. 536; Cook on Corporations (7 Ed.) sec. 269, note 4, p. 775; Niles v. Ludlow Valve Mfg. Co., 202 Fed. 141; Bassett v. U. S. Cast Iron Pipe & Foundry Co., 73 Atl. 514; Will v. United Lankat Plantations Co. (1912), 2 Ch. 571; Scott v. B. & O. Ry. Co.,

93 Md. 475; 7 Thompson on Corporations (3 Ed.) sec. 5338, and In re National Telephone Co., 1 Ch. (1914) 755 (disapproving In re Espuela Land & Cattle Co. (1909), 2 Ch. 187), in support of what is said to be the modern prevailing theory applicable to this case, to-wit, that a preference or special privilege accorded preferred stock as to its participation in assets negatives its further participation therein.

Whatever may be the correct rule as between these two theories, all authorities agree that if the intention, not violative of any statute, can be gathered from the contract, it is controlling. As above noted, it is provided in the articles of incorporation that (italics ours) "said preferred stock shall upon distribution of the assets of said corporation, be *first paid in full before any of said assets are applied to any of the common stock.*" In 6 Ruling Case Law, page 842, sec. 232, with reference to construction of contracts, it is said:

"The grammatical and ordinary sense of the words in a contract is to be adhered to, unless that would lead to some manifest absurdity or some repugnance of inconsistency. This has been called the golden rule of construction."

The words, "paid in full," ordinarily mean that nothing more is due the person so paid. To be sure, the effect in this case of applying the term in harmony with the context is that payment of the par value of one hundred dollars a share for the preferred stock constitutes payment "in full," but that is the term employed in the charter, and adherence to its ordinary meaning leads to no manifest absurdity or repugnance or inconsistency. The incorporators chose to postpone participation of the common stock in the assets on liquidation until the preferred stock had been paid its due. This preference was secured to preferred stockholders even though the common stockholders might never receive anything on any of the original capital invested or any part of the dividends they had foregone in building up a reserve for the safety of the business. In consideration of this special privilege accorded preferred stockholders why should not the incorporators specify, as they did, that this payment should be "in full?" Undoubtedly they had power to limit the rights of preferred stockholders as well as secure preferences for them, and we think they clearly did so by this provision. It is conceded by counsel on both sides that the words "par value" appearing in the by-law hereinabove set forth mean the same thing as the words "paid in full," appearing in the articles of incorporation, and the general rule is that by-laws must yield to charter provisions if consistent therewith. The preceding recital in the by-law that preferred stock should be entitled to a dividend from the profits of the capital at the rate of six per cent per annum "and no more" is also indicative of an intention to limit the rights of

holders of preferred stock to preferences specified. The construction we have thus placed on the contract is in line with the majority opinion on similar facts in Williams et al. v. Renshaw et al., 220 N. Y. Supp. 532 (Sup. Ct. App. Div. 1927). In the separate concurring opinion of VAN KIRK, Acting Presiding Judge, the interpretation adopted is thus discussed (1. c. 538):

"In my view it was intended here that, when the preference was paid, the preferred stockholder had no further claim upon capital assets. This is evidenced by the expression that, 'upon distribution of assets, the preferred stock shall be paid in full at par before any amount shall be paid on account of the common stock,' or, as expressed in the stock certificate, where the words 'at par' are omitted, 'the holders of the preferred stock are entitled to be paid in full before any payment is made on account of the common stock.' Where an obligation is paid in full, nothing remains to be paid thereon. In their common and ordinary meanings, the words 'paid in full' mean complete payment."

Plaintiff-appellant's assignment of error is overruled. However, because of error found and above noted on defendant-appellant's assignment, the judgment is reversed and the cause remanded with directions to dismiss plaintiff's bill. All concur, except *Walker, J.*, who dissents in a separate opinion.

WALKER, J. (dissenting).—I do not concur in the reasoning of the majority opinion, nor in the conclusion deduced therefrom.

That my attitude may be clearly understood I deem it necessary to state the facts as I glean them from the record, and my conclusions concerning the applicable law under those facts.

The facts, as alleged in the pleadings and disclosed by the evidence, are as follows:

The defendant was an incorporated mercantile company engaged in the sale of dry goods in the city of St. Joseph, Missouri. Its capital stock was divided into eight thousand shares, of the par value of one hundred dollars each, of which three thousand shares were common and five thousand shares preferred stock. It had been in business since December 29, 1910, the date of its incorporation, until January 1, 1928, when it went into liquidation.

The article of incorporation setting forth the rights of the preferred stockholders, is as follows:

"Article 3. That the amount of the capital stock of this company shall be $800,000, divided into 8,000 shares of the par value of $100 each; that of said entire capital stock, 3,000 shares shall be common stock and the remaining 5,000 shares shall be preferred stock, which said preferred stock shall be entitled to a dividend of six per cent per annum out of the net yearly income earned in any one current year before any dividend shall be made and paid on any of the

common stock of said corporation, and which said preferred stock shall, upon distribution of the assets of said corporation be first paid in full before any of said assets are applied to any of the common stock, but that said preferred stock shall have no voting power, and that the entire amount of said capital stock has been bona-fide subscribed and the full amount thereof actually paid up in lawful money of the United States and is in the custody of the persons hereinafter named as the first Board of Directors.''

After the issuance of the certificate of incorporation at the first meeting of the stockholders, which was on the day succeeding the issuance of the articles, they formulated and adopted a by-law defining the rights of the preferred and common stockholders as follows:

''The preferred stock of this corporation shall be entitled to a dividend from the profits of the capital at the rate of six per cent per annum cumulative and no more, and upon the winding up of the company, the holders of said preferred stock shall be entitled, after the debts of said corporation are paid, to receive from the remaining assets of said corporation the par value of said preferred stock before the holders of the common stock shall receive any sums in liquidation upon their holdings of common stock; but said preferred stock shall have no voting power.''

No changes were subsequently made in the articles of incorporation or the by-laws except that the preferred stockholders were given voting power.

The dividends upon the stock of the preferred stockholders were paid each year up to and including the year 1925, but has not been paid for the years 1926 and 1927. On January 1, 1928, the company decided to dispose of its assets, wind up its affairs, and go out of business. Its merchandise has been sold, and its book accounts are nearly all collected. In the early part of 1928 and before the institution of this suit, the preferred stockholders, including the plaintiff, were paid in liquidation $100 per share for their stock. The debts of the company have been paid and it has on hand $170,000 in cash, about $5,000 in book accounts, and real estate consisting of two buildings, one a seven-story and basement building, and an additional four-story building. This real estate is carried on the books of the defendant at $271,000, which represents the cost of the property less a small depreciation. Efforts to sell this real estate have, so far, been unsuccessful. The carrying charge of these buildings in the way of taxes, insurance, etc., is from $8,000 to $10,000 a year. The president of the defendant company testified the buildings were worth approximately the amount at which they were carried on the books. The company at the time of the institution of this suit was proceeding with the liquidation and had assets on hand more than sufficient to pay the common stockholders at $100

per share, and the preferred stockholders the accrued and delinquent dividends which the lower court found should be paid to them.

The plaintiff's assignment of error, as a basis for its appeal, is the refusal of the trial court to enjoin the defendant from distributing in liquidation the remainder or surplus assets of the company to its common stockholders after the payment to its preferred stockholders of dividends on their stock for the years 1926 and 1927.

The defendant's assignment of error is that the trial court erred in decreeing that the preferred stockholders were entitled to a dividend of six per cent for the years 1926 and 1927.

I. Generally speaking, the rights of stockholders of a corporation, whether they be preferred or common, are, in the absence of a statute, an article of incorporation or a by-law, subject to the same rules of construction.

If this be true, then the holders of stock, whether designated as preferred or common, are entitled to share in the surplus of a corporation, after each of the holders of the same has received the full par value of his stock, unless, as stated, the contract (by which we mean the articles of incorporation and the by-laws) setting forth the terms and conditions upon which the stock was issued or is held, limits the rights of the preferred stockholders. This rule, after a review of the law in different jurisdictions, is succinctly stated in Corpus Juris as follows:

"Speaking generally, in the absence of any controlling provision in the statute or contract, preferred stockholders stand upon substantially the same footing as ordinary stockholders and have the same rights and are subject to the same liabilities, except that they are entitled to a certain preference." [14 C. J. sec. 573.]

Following this rule, the court in Smith v. Southern Foundry Co., 166 Ky. 208, 179 S. W. 205, said:

"Except as to preference in the payment of dividends and distribution of the assets as provided by the certificate and charter, and when authorized by statute, the holders of common and preferred stock have the same rights and are subject to the same liabilities."

The United States courts and the courts of last resort of Maryland, New York, Pennsylvania, Virginia and England, have adopted this rule. *Vide* cases cited in 6 American Law Reports, page 829, where the rule is thus summarized:

"In the absence of a limitation imposed by contract or by statute, the preferred stock in a corporation is entitled to share equally with the common stock in any distribution of profits after the common stock has received . . . an amount equal in rate to that stipulated for the preferred stock."

Calling stock preferred stock, however, "does not, *per se,* define the rights of such stock, but to determine in what respect the holder of such stock is to be preferred to the holder of ordinary stock,

resort must be had to the statute or contract under which it is issued. [Elkins v. Camden & Atl. Ry. Co., 36 N. J. Eq. 233.]

Referring to defendant's articles of incorporation and by-laws we find that the articles, while the company is a going concern, provide for a six per cent dividend, to be paid out of the net yearly income in any one year, to the preferred stockholders before "any dividend shall be paid on the common stock;" and upon a distribution of the assets the preferred stockholders shall "be paid in full before any of the assets are applied to the payment of the common stock." The language employed in the articles does not limit the amount to be paid to the preferred stockholders, either as a dividend during the active operation of the company or as a distribution upon its liquidation. The provisions of the article, above quoted, are a concession to but not a limitation upon the plaintiff's share of earnings during the operation of the company or his share of the capital stock upon its liquidation.

After having received such advantages or preferences there is no further agreement or contract so far as the articles are concerned, as to the disposition of profits during the operation of the company or of its assets in the event of liquidation. Nor is there anything in the by-laws which changes the situation. The by-law having reference to the rights of preferred stockholders to dividends is as follows:

"The preferred stock . . . shall be entitled to a dividend from the profits of the capital at the rate of six per cent per annum cumulative and no more, and upon the winding up of the company the holders of said preferred stock shall be entitled after the debts of said corporation are paid to receive from the remaining assets of said corporation the par value of said preferred stock before the holders of the common stock shall receive any sums. . . ."

If the contention be made that the surplus of this company after granting to preferred stockholders their authorized preferences and after paying to the common stockholders the par value of their stock, represents the profits in the business, and that the by-law, above quoted, limits the preferred stockholders' interest in the profits to the annual six per cent, then as a logical sequence it must follow that during the continuance of the company in business the right of the preferred stockholders is limited to a six per cent annual dividend. However, it must be noted from the language employed that this limitation is applicable only to dividends to which stockholders are entitled by virtue of a proper declaration thereof from the net profits while the company is in active operation or a going concern. When, however, it goes into liquidation the net profits accumulated and represented by the surplus, then existing, become capital assets and lose their identity as profits. It is therefore, under the facts at bar, solely a question of the distribution of capital assets among stockholders, and by-laws having application to the declarations of divi-

dends by the directors, while the company is a going concern, have no application.

II. It is contended by the defendant that inasmuch as the articles of incorporation do not expressly state that the dividends shall be cumulative there is nothing to indicate what the intention of the parties was in that regard.

The provisions of the articles of incorporation and the by-laws applicable to the rights of stockholders while the defendant was a going concern are as follows:

| Articles of Incorporation. | By-laws. |
|---|---|
| "Said preferred stock shall be entitled to a dividend of six per cent per annum out of the net yearly income earned in any one current year before any dividend shall be made and paid on any of the common stock of said corporation." | "The preferred stock of this corporation shall be entitled to a dividend from the profits of the capital at the rate of six per cent per annum cumulative and no more." |

The rule of construction urged by the defendant has no application, except in cases where there is nothing to indicate what the intention of the parties was in the premises. No such condition exists here, and an application of the rule is certainly unauthorized where, as in this case, the stockholders met and adopted the by-laws within twenty-four hours after the articles were filed and before the preferred stock was issued. If there had been no affirmative declaration in the by-laws as to the cumulative character of the dividends the provision in the articles that they were to be paid "out of the net yearly income earned in any one year," would, under well considered cases and a recognized treatise on the subject, have necessarily rendered such dividends cumulative. [Boardman v. Lake Shore, etc. Ry. Co., 84 N. Y. 157; Allen v. Montana Ref. Co., 71 Mont. 105, 227 Pac. 582; 6 Fletcher on Corp. p. 6028; 14 C. J. 350 and 351.]

III. There is no basis for the application of the rule contended for by the defendant on the ground of inconsistency between the articles and the by-laws. The terms of the former, as we have stated, without expressly so declaring, render the dividends cumulative; the latter simply gives affirmative declaration to the construction required to be placed on the former. Certainly no other reasonable interpretation can be given to the articles and by-laws when considered as a whole. There being no inconsistency the rule of construction is general, that an express by-law—in this case concerning the dividends—should be held to interpret and explain the articles in regard thereto and we should therefore give it the meaning intended by the stockholders. Ample authority for this conclusion is not wanting.

"A court will not give to it [the charter] a positive construction opposed to any consistent practical construction which it has received from the corporation and its members when such practical construction is not unreasonable or contradictory to principles of justice or morality or to any rule of law or public policy." [14 C. J. 350 and cases.]

In view of the foregoing well defined rule there is respectable authority holding that after the unanimous adoption of a by-law and the issuance of the stock, even though irregular and unauthorized, the company is estopped from setting up the invalidity of the contract so made. For instance, in the case of Strong v. Minn. Auto. Trade Assn., 186 N. W. 800, it is said:

"A by-law, though not expressly authorized, may operate as a contract between the corporation, on one side, and its members, on the other, so as to be binding on both, and a member may be bound by an agreement which adopts an invalid by-law."

Aside from the rulings cited and in the absence of express language in the articles making dividends either cumulative or non-cumulative, under the facts in this case, indicative of the intention of the stockholders, the law will imply that the stock is cumulative.

If preferred stock is issued, without any mention of whether the dividends are cumulative, then the law makes them cumulative. As soon as there are net profits available for dividends, the corporation must pay the preferred dividends and all arrears thereon before a dividend is declared on the common stock. This is the well-settled rule at common law in this country and in England, and is not only equitable but is in accord with the understanding of the business community. [Henry v. Great Northern Ry. Co., De G. & J. 606; Boardman v. Lake Shore & Mich. Sou. Ry. Co., 84 N. Y. 157; Jermain v. Lake Shore & Mich. Sou. Ry. Co., 91 N. Y. 483; Lockhart v. Van Alstyne, 31 Mich. 76, 18 Am. Rep. 156; Hazeltine v. Belfast & Moosehead Lake Ry. Co., 79 Me. 411, 10 Atl. 328, 1 Am. St. 330; Hazel Atlas Glass Co. v. Van Dyk & Reeves, 8 Fed. (2d) 716; Langben v. Goodman, 275 S. W. 841; 1 Cook on Corp. (7 Ed.) 96, sec. 273.]

IV. If, as has been demonstrated, the articles of incorporation and the by-laws constitute a contract and the latter is not inconsistent with the former, then it follows that the latter—the by-laws, which are declaratory of the intention of the stockholders—constitute a practical construction of the former or the articles of incorporation, to which full effect should be given. Further than this, the dividends on the preferred stock, being cumulative so long as the company continued in existence as a going concern, the holders of the preferred stock were entitled to have paid to them the dividends on said stock for the years 1926 and 1927 before any dividends were paid to the holders of the common stock.

V. However, it is the contention of the defendant, that a cumulative dividend can only be paid out of earnings subsequent to the years in which the default occurs, and inasmuch as there were no earnings in 1926 and 1927 and the company then went out of existence, there have never been any earnings out of which the delinquent dividends could be paid even if cumulative. The correctness of the conclusion that dividends are payable only out of subsequent earnings is not only open to question but it will not stand the test of analysis. If a dividend upon preferred stock is cumulative it may be paid out of any earnings of the company regardless of the time when they were earned because they represent the standing obligation of the company as between its common and preferred stockholders. This probably not being determinative of the issues need not be considered as it is not necessary to depend upon a surplus from past earnings from which delinquent dividends shall be paid when the company is in process of liquidation. Such dividends may be paid out of the capital assets whether the same represent past earnings or not; and under the contract existing between the company and its preferred stockholders the dividends, as was held by the trial court, for 1926 and 1927 must be paid before any part of the assets of the company are paid to the common stockholders. The contention of the defendant, in this regard, grows out of an attempt to apply the provisions of the articles of incorporation and by-laws applicable only to the company as a going concern, when the provisions applicable are those pertaining to the company when in process of liquidation. These provisions are as follows:

Articles of Incorporation.

". . . and which said preferred stock shall, upon distribution of the assets of said corporation be first paid in full before any of said assets are applied to any of the common stock. . ."

By-laws.

". . . and upon the winding up of the company the holders of said preferred stock shall be entitled, after the debts of said corporation are paid to receive from the remaining assets of said corporation the par value of said preferred stock before the holders of the common stock shall receive any sums in liquidation upon their holdings of common stock."

VI. It is further contended that if there is a surplus, over and above the capital stock of the company at the time of the liquidation of its affairs, it consists of earnings prior to 1926 and belongs to the common stockholders. This theory has some support, as the cases cited by the defendant will show, but the better rule is otherwise, as

is demonstrated in Continental Ins. Co. v. United States, 66 L. Ed. 871, in being founded upon sounder reason and better logic.

The surplus profits accumulated by defendant company prior to 1926 were never distributed and have now completely lost their identity as surplus profits belonging to any stockholder or class of stockholders and have become capital assets and as such the preferred stockholders should be paid under the terms of the articles and by-laws.

VII. It is also contended that the preferred stock is paid in full when the holder receives $100 per share therefor and that this payment constitutes a full acquittance and discharge of all obligations of the company to him. This contention is sought to be based on that provision in the articles of incorporation which provides that "the preferred stock shall, upon a distribution of the assets, be paid in full before any of said assets are applied to the payment of the common stock." While the articles require that *the preferred stock shall be first paid in full* before any of the assets are applied to the payment of the common stock, they do not require that all of the claims of the preferred stockholder shall be satisfied regardless of whether his claims result in the payment to him of a greater amount than a full payment of the par value of his preferred stock. The payment in full to him, therefore, occurs when he receives $100 per share for his stock and the accrued and unpaid dividends, and this the articles of incorporation assure to him before any of the assets are applied to the common stock.

VIII. This company was incorporated under the Statute of 1909, regulating the formation of manufacturing and business companies. The defendant contends, under Sections 3339 and 3358 of said statute as a prerequisite to the right of preferred stockholders to share in a surplus with the common stockholders upon a liquidation of the assets of a company, that the articles should affirmatively grant this right. Section 3339 provides that the articles with respect to preferred stock shall set out the amount of the same, the number of shares, the names of the subscribers, the preference and priorities and the classification and character thereof as is provided in Section 3358.

Section 3358 provides for the character, amount, the number of shares, the price per share, the rate of the dividends whether cumulative or not and what priority if any the preferred stock shall have over the common stock out of the assets in case of liquidation.

While these sections require a statement of the preferences to be given the preferred stockholders, there is no language which limits the right of any stockholder to share in the assets of the company which remains over after the preferences provided for by the statute,

have been satisfied. The preferred stockholder has certain inherent rights as such which need not be set out in the articles any more than the rights of the common stockholder need be set out to share in the assets.

While the sections of the statute cited require the articles of incorporation to declare the preferences to be given to the preferred stock they do not deny the right of the owners of such stock to express in a by-law, as was done in this case, their interpretation of the meaning of the articles; nor does it limit their right to contract among themselves in a by-law as to the manner in which the assets of the company are to be distributed when it goes out of business, has paid all of its debts and only its stockholders are interested in the liquidation of its affairs.

We are therefore of the opinion that the sections of the statute referred to do not require the articles of incorporation to state the rights which the preferred stockholders have in common with the common stockholders; and that the omission from the articles of any reference to a share in the surplus by the preferred stockholders when the company is in process of liquidation does not preclude their right to share in such surplus. As we have stated, all the obligations of this company have been discharged; and it is winding up its affairs. The contract, therefore, as to the distribution of the assets of the company is solely one of agreement between the stockholders and no questions of public policy or the rights of creditors are involved.

A review of the cases cited by defendant and in the majority opinion do not sustain their contentions as to the proper determination of this case.

That the law is as stated in 14 Corpus Juris, page 420, cited by defendant need not be questioned: "The corporation cannot bind itself by an absolute guarantee to pay dividends, otherwise than out of profits, to the impairment of the capital stock and possible prejudice of creditors unless it is expressly authorized by statute." No possible prejudice to creditors can occur when there are no creditors, and when the company is no longer a going concern but is dividing its capital among its stockholders.

The case of Shields v. Hobart, 172 Mo. 491, is a suit by a judgment creditor, involving the rights of creditors and alleging that the action of the corporation in declaring dividends was a fraud upon creditors.

The case of Hodde v. Nobbe, 204 Mo. App. 109, was a suit by a receiver on behalf of creditors to recover dividends paid out of capital in fraud upon the creditors.

Coleman v. Booth, 268 Mo. 64, was a suit by a trustee in bankruptcy for creditors to recover dividends paid out of capital while the company was a going concern.

The case of Kidd v. Cereal Food Company, 145 Mo. App. 520, was a suit at law in an attempt to recover preferred dividends while the company was a going concern.

It follows, therefore, that the ruling of the majority opinion, in so far as it holds that the preferred stockholders are not entitled to a share in the surplus of the company when it is in process of liquidation, is error; and the case should be reversed and remanded with directions to the court to modify its judgment in conformity with this dissenting opinion.